## Armour v. Concord Mutual Insurance Company

*Herbert Braker*, for plaintiff.
*Louis Kassen*, for defendant.

MARUTANI, *J.*, January 8, 1979—

## PROCEDURAL BACKGROUND

Defendant, Concord Mutual Insurance Company (Concord Mutual), the automobile liability insurance carrier for plaintiff, Patricia C. Armour (Armour), has filed preliminary objections to plaintiff's complaint in equity. By her complaint, plaintiff seeks relief for payment of lost wages, medical expenses incurred, 18 percent interest thereon, attorney's fees, as well as an order directing future payment of losses and expenses, plus punitive damages.

Concord Mutual's preliminary objections are: (a) motion to strike, contending that plaintiff has "a full, complete, and adequate non-statutory [sic] remedy at law based upon the No-Fault Act [Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq.] and the insurance contract with defendant"; and in the alternative, (b) demurrer for alleged failure to state a cause of action for punitive damages under the No-fault Act which, defendant contends, is "the sole and exclusive remedy for the non-payment of No-Fault Benefits by an insurer, that is, the imposition of attorneys fees and interest at 18% per annum."[1]

Plaintiff's complaint in equity contends, in brief summary, that "defendant advised plaintiff that in order to obtain insurance from defendant, she was required to sign a certain paper" and "[r]elying on defendant's integrity, plaintiff signed a paper

---

1. Defendant's preliminary objections to plaintiff's complaint in equity, par. 5.

which attempted to indicate that plaintiff was purchasing 'Option B' "; yet "[p]laintiff never received an endorsement from defendant or any other person which indicated what 'Option B' was in fact."[2] Plaintiff also contends that "[d]efendant has in the past engaged in a course of conduct. . . to thwart the intent of the 'No-Fault Laws of Pennsylvania' by issuing a majority of automobile policies with 'Option B' or other inferior options as part of their policies" and "in an attempt to deceive. . . their policyholder, consistently issued policies. . . without attaching endorsements to said policies."[3]

In addition, plaintiff contends that "defendant has not made prompt payments in this and in other matters in a concerted effort to coerce plaintiff and other injured persons to accept lesser sums than are properly due from defendant."[4]

## DISCUSSION

### 1. Demurrer

Defendant's demurrer challenging plaintiff's claim for punitive damages[5] is directed to the question of whether or not the No-fault Act's provisions

2. Plaintiff's complaint, pars. 5 through 10.

3. Ibid., pars. 12 and 14. The relative merit, or demerit, of this Option B cannot be determined: a copy of this option does not appear as part of the record, nor does any other option to which it might be compared for evaluation purposes.

4. Ibid., par. 34.

5. The legality of damages should have been raised by a motion to strike (impertinent matter), not by a demurrer: Hudock v. Donegal Mutual Insurance Co., 438 Pa. 272, 264 A. 2d 668 (1970). However, no objection having been asserted by plaintiff as to this procedure, the objection is waived. It may

for attorney's fees and 18 percent interest provide "the sole and exclusive remedy." For reasons referred to below, we cannot agree with defendant's position.

Section 106(a)(1) of the No-fault Act provides for payment of benefits within 30 days "after the receipt by the obligor [insurer] of each submission of. . . proof of. . . loss sustained, . . ." after which the provision for interest at 18 percent per annum is triggered as well as a possible claim for "reasonable attorney's fee" under section 107. Such inducements are consistent with the stated policy of the No-fault Act, "to establish. . . a Statewide system of *prompt.* . . benefits for motor vehicle accident victims. . . ": section 102(b). (Emphasis supplied.) Thus, under the No-fault Act, a penalty for late payment of benefits would be imposed *even without any fault* on the part of the obligor-insurer.

Further, under section 106(a)(2) the obligor-insurer may discharge its obligation "by making direct payment to the supplier or provider of products, services or accommodations," namely, to third parties, to whom the provisions relating to 18 percent interest and attorney's fees would also be available.[6] Thus to equate the inducements for prompt payment with relief giving rise to punitive

also be noted that by defendant's failure to raise a motion for a more specific pleading, Pa.R.C.P. 1017(b)(3), defendant must be considered to have waived any objection it might have had as to whether or not plaintiff had complied with the provisions of Pa.R.C.P. 1019(b) which mandates that averments of fraud be "averred with particularity."

6. Thus section 107, referring to attorney's fees, uses the broader term "claimant," rather than a more restrictive term such as "insured," "victim," or "survivor."

damages[7] is `inconsistent with both the stated policy of the No-fault Act as well as the inter-relationship of the provisions of the act.

### 2. Adequate Remedy at Law

Whereas plaintiff voices fears that defendant has refused, and will continue to refuse to pay benefits as they accrue,[8] defendant argues in its brief that plaintiff has an adequate remedy at law based upon the insurance contract.[9] In this respect, we must agree with defendant.

Upon conclusion of the current litigation, the losing party would be collaterally estopped from contesting issues resolved in this litigation: Davis v. O'Brien, 230 Pa. Superior Ct. 449, 326 A. 2d 511 (1974); absent, of course, change of a material fact in the interim: Moskowitz v. Prudential Insurance Co., 355 Pa. 30, 47 A. 2d 648 (1948). However, if there were a change in material facts the mere fact that the proceedings had been on the equity side of the court would not obviate the need for further legal proceedings.

Also, in passing, it is to be noted that plaintiff has available to her the broad amending provisions of

---

7. See Restatement, 2d, Torts, §908(1), defining "punitive damages," which has been adopted in Pennsylvania: Chambers v. Montgomery, 411 Pa. 339, 192 A. 2d 355 (1963).

8. "No-fault benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained," 40 P.S. §1009.106(a)(1).

9. Defendant then seeks to have plaintiff's complaint in equity "dismissed." However, Pa.R.C.P. 1509(c) specifies that: "If the objection is sustained, the court shall certify the action to law side of the court."

Pa.R.C.P. 1033, which would be available into the very midst of trial itself.

Wherefore, there is hereby entered the following

## ORDER

And now, January 8, 1979, upon consideration of the preliminary objections (in the nature of a motion to strike and, in the alternative, demurrer) filed by defendant, Concord Mutual Insurance Company, and directed to the complaint in equity filed by plaintiff, Patricia C. Armour,—as well as consideration of the latter's response thereto,—it is hereby adjudged, ordered and decreed that defendant's demurrer is dismissed, and defendant's motion to strike, amended to read as a motion to certify to the law side, is granted and this action is certified to the law side of the court. Defendant shall have leave to file answers within 30 days from date hereof, or such other time as the parties, acting by their counsel, may agree in writing.