# Shetler v. Zeger

*Denis M. DiLoreto,* for plaintiff.
*Thomas J. Williams,* for defendant.
*Edward I. Steckel,* for petitioners.

WALKER, *J.,* June 1, 1989 — On May 6, 1987, plaintiff, Julie A. Shetler, and defendant, Brian R. Zeger, were involved in an automobile accident at the intersection of Warm Spring (Pennsylvania Route 995) and Leafmore roads in Hamilton Township, Franklin County, Pennsylvania. On December 12, 1988, plaintiff filed a complaint in the above-captioned action seeking both compensatory and punitive damages. Plaintiff's complaint alleged, inter alia:

"(10) At the time of the collision defendant was

intoxicated, was not physically fit to drive and was not capable of safely operating a motor vehicle.

"(11) The collision above alleged was solely and proximately caused by the negligence of the defendant, said negligence consisting of the following:

"(a) Operating his vehicle while the amount of alcohol by weight in his blood was greater than 0.10 percent in violation of section 3731 of the Pennsylvania Vehicle Code, 77 [sic] Pa.C.S. §101, et seq.

"(b) Operating his vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving in violation of section 3731 of the Pennsylvania Vehicle Code.

"(c) Failing to stop at the lawfully erected stop sign for eastbound traffic at the intersection of Leafmore Road and Pennsylvania Route 997 [sic] in violation of section 3323 of the Pennsylvania Vehicle Code.

"(d) Failing to yield the right-of-way to the plaintiff's vehicle approaching on Pennsylvania Route 995 in violation of section 3323 of the Pennsylvania Vehicle Code.

"(e) Failing to maintain a diligent lookout and watch before entering the intersection of Pennsylvania Route 995 and Leafmore Road for vehicles approaching the intersection on Pennsylvania Route 995."

The complaint further alleged that defendant's actions demonstrated an "utter disregard for the safety of others" and constituted "wanton and willful misconduct" so as to entitle plaintiff to punitive damages.

On March 9, 1989, defendant filed preliminary objections in the nature of motions for partial summary judgment or, in the alternative, partial judgment on the pleadings. Defendant contends that plaintiff's averments are not sufficient evidence of outrageous conduct as to warrant proceeding to trial

on the issue of punitive damages. Defendant thus argues that any evidence regarding defendant's blood alcohol content on the date in question should be inadmissible at trial.

The above matter was argued before the court on April 6, 1989. It is now ready for disposition.

A motion for summary judgment should only be granted if the record shows that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The same test is applied to a motion for judgment on the pleadings, but such determination is limited solely to the pleadings. Pa.R.C.P. 1035(b). In considering motions for summary judgment and judgment on the pleadings, a court must examine the record (and only the pleadings for the latter motion) in the light most favorable to the non-moving party. Any doubt as to whether a genuine issue of material fact exists must be resolved against the moving party. *Knecht v. Citizens and Northern Bank,* 364 Pa. Super. 370, 528 A.2d 203 (1987); *Melmed v. Motts,* 341 Pa. Super. 427, 491 A.2d 892 (1985).

The sole issue in the above matter is whether the allegations contained in plaintiff's complaint are sufficient to make out a claim for punitive damages. The principle authority in Pennsylvania on whether punitive damages may be imposed on an intoxicated driver who causes injury to another is *Focht v. Rabada,* 217 Pa. Super. 35, 268 A.2d 157 (1970). In *Focht,* the trial court had ruled that evidence of defendant's intoxication was inadmissible because it could not support an award of punitive damages. On appeal, the Superior Court vacated the lower court's ruling and concluded that "under the appropriate circumstances, evidence of driving while under the influence of intoxicating liquors may constitute a sufficient ground for allowing punitive damages"

pursuant to section 908 of the Restatement of Torts. *Focht* at 42, 268 A.2d at 161. The Superior Court thus remanded the case to the trial court to determine whether the offers of proof were sufficient to submit the issue of punitive damages to the jury.[1]

Pennsylvania had adopted the law of punitive damages as set forth in section 908 of the Restatement of Torts[2] and the comments thereunder, *Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355 (1963). Section 908(1) provided that "punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct." Comment (b) of the above section stated that "outrageous conduct" consists of "acts done with a bad motive or with a reckless indifference to the interests of others." Punitive damages are thus recoverable when the act is done with reckless indifference as well as with bad motive or intent. *Focht* at 38, 268 A.2d at 159.

The *Focht* court determined that the phrase "reckless indifference" derived its meaning from comment (d) of section 500 of the Restatement of Torts ("Reckless Disregard of Safety"). That comment provided:

"[I]f the actor's conduct is such as to involve a high degree of chance that serious harm will result from it to anyone who is within range of its effect, the fact that he knows or *has reason to know that others are within such range* is conclusive of the

---

1. The case was subsequently settled and the trial court did not have to rule on the above issue.

2. *Focht* was decided under the original Restatement of the Law of Torts. Since that decision, the American Law Institute has adopted and promulgated the Restatement (Second) of the Law of Torts. The relevant sections and comments referred to in *Focht* remain substantially unchanged in the Restatement (Second) of Torts.

recklessness of his conduct toward them." *Focht* at 39, 268 A.2d at 159. (emphasis supplied by *Focht* court).

The court further determined that:

"[I]n certain factual circumstances, the risks presented by a drunken driver may be so obvious and the probability that harm will follow so great that outrageous misconduct may be established without reference to motive or intent." *Focht* at 41, 268 A.2d at 161.

Since the Superior Court rendered its decision in *Focht,* no other appellate court in this commonwealth has had the opportunity to elaborate on what constitutes "certain factual circumstances" which would warrant an award of punitive damages. This issue has, however, been squarely addressed at the court of common pleas level.

In *Long v. Ohler,* 1 D.&C. 4th 402 (1988),[3] defendant's vehicle had struck plaintiff's vehicle head-on when the former crossed the center line of a highway. Plaintiff's complaint alleged that defendant's conduct was "careless, wanton, reckless, negligent and outrageous" in that he drove his vehicle:

"(1) at a time when his blood-alcohol content was 0.22 percent,

"(2) directly into plaintiffs' path,

"(3) without keeping a proper watch for others,

"(4) without yielding the right-of-way,

"(5) at an unsafe speed, given the weather conditions,

"(6) without adequate control,

"(7) on the wrong side of the highway, and

3. While *Long* is not controlling in this court, it certainly is persuasive in light of the fact that no appellate case law exists on the issue of what constitutes "certain factual circumstances."

"(8) in violation of the Vehicle Code." 1 D.&C. 4th at 403.

Defendant filed a preliminary objection to plaintiff's complaint in the nature of a demurrer to the portion of plaintiff's complaint seeking punitive damages.

Judge Kuhn decided that the above allegations were sufficient to allow the case to proceed to trial on the issue of punitive damages. He cited with approval the *Focht* court's comment that:

"Automobiles represent the most lethal and deadly weapons today entrusted to our citizenry. When automobiles are driven by intoxicated drivers, the possibility of death and serious injury increases substantially. Every licensed driver is aware that driving while under the influence of intoxicating liquor presents a significant and very real danger to others in the area." 1 D.&C. 4th at 405, citing *Focht* at 41, 268 A.2d at 161.

Judge Kuhn also noted that in the 17 years since the *Focht* decision, thousands of Pennsylvania citizens have been killed or injured by intoxicated drivers. 1 D.&C. 4th at 405. Those senseless deaths and injuries have occurred despite our legislature passing tougher legislation regarding driving under the influence and our law enforcement personnel's efforts to enforce that legislation more strictly. Instead of having improved the problem, driving under the influence has only gotten worse.

Applying the above-stated law to the facts of this case, the court determines that the allegations in plaintiff's complaint are sufficient evidence of outrageous conduct so as to support a claim for punitive damages. The court believes that plaintiff's allegations that defendant was not physically capable of safely operating a motor vehicle, operated his vehicle with a blood alcohol content in excess of

0.10, failed to stop at a lawfully erected stop sign, failed to yield the right-of-way, and failed to maintain a diligent lookout before entering the intersection are sufficient to allow the case to proceed to trial on the issue of punitive damages. Since a genuine issue of material fact exists, defendant's preliminary objections must be denied.

As in *Long,* the case at bar is not ready for submission to the jury. Plaintiff must initially establish that defendant violated a section(s) of the Motor Vehicle Code. If plaintiff establishes such a violation by defendant, she may then introduce into evidence defendant's blood alcohol content on the date in question. If, however, plaintiff fails to establish a motor vehicle violation by defendant, then evidence of defendant's blood alcohol content shall be inadmissible.

In a related matter before this court, plaintiff served a notice of deposition and subpoena duces tecum on Markell DeLoatch, photojournalist, and his employer, *Public Opinion* newspaper, to produce unpublished photographs of the accident scene taken by DeLoatch shortly after the accident. Petitioners, DeLoatch and *Public Opinion,* filed a petition for a protective order claiming that the unpublished photographs were privileged information pursuant to the Pennsylvania Shield Law[4] and the First Amendment to the U.S. Constitution. This matter was also argued before the court on April 6, 1989.

Section 5942(a) of the Pennsylvania Shield Law provides as follows:

"(a)*General rule* — No person engaged on, connected with, or employed by any newspaper of general circulation or any press association or any radio

4. 42 Pa.C.S. §5942(a).

or television station, or any magazine of general circulation, for the purpose of gathering, procuring, compiling, editing or publishing news, shall be required to disclose the source of any information procured or obtained by such person, in any legal proceeding, trial or investigation before any government unit."

The seminal case on this issue is *In re Taylor,* 412 Pa. 32, 193 A.2d 181 (1963). In that case, officials of the now defunct *Philadelphia Bulletin* newspaper were subpoenaed to appear before a grand jury and produce documents and tape recordings of the paper's investigation into alleged political corruption in city government. When the officials refused to comply with the subpoena, they were found in contempt of court. On appeal, the Supreme Court reversed the lower court's ruling and held that the material sought was protected by section 5942(a) of the Shield Law.

The importance of the *Taylor* decision is two-fold. First, the phrase "source of any information" was interpreted to mean not only the identity of the informant, but likewise all documents, inanimate objects and all sources of information. *Taylor* at 40, 193 A.2d at 185. Secondly, the court held that the underlying purpose of section 5942(a) is to ensure that newsmen are able to fully and completely protect the sources of their information so that important information, tips and leads do not dry up. *Taylor* at 41, 193 A.2d at 185.

In *Hatchard v. Westinghouse Broadcasting Co.,* 516 Pa. 187, 532 A.2d 346 (1987), the Supreme Court adhered to the principle established in *Taylor*. The court stated, however, that the purpose of section 5942(a) would not be promoted by protecting all documentary information in the possession of a publisher where disclosure of some of that

information would not reveal the identity of a confidential media-informant. *Hatchard* at 192, 532 A.2d at 350. The court held that unpublished information possessed by a television station is discoverable by a plaintiff in a libel action where that information would not reveal the identity of a personal source of information. *Hatchard* at 195, 532 A.2d at 351.

Although *Hatchard* was decided in the context of a libel action, this court believes its reasoning has equal application to the case at bar. If the court were to grant the protective order, it would, in effect, be giving the newspapers blanket protection of all gathered information whether or not that information would reveal its source. This was clearly not the Supreme Court's intention in *Taylor* or *Hatchard*. The Supreme Court expressly stated that providing an absolute shield on all information would not be necessary to effectuate the purpose of the Shield Law. *Hatchard* at 192, 532 A.2d at 350. The *Hatchard* court determined that if *Taylor* is read as interpreting the Shield Law to protect from discovery documentary material which would not reveal sources of information, then that decision interpreted the Shield Law much too broadly. *Hatchard* at 195, 532 A.2d at 351.

Another case of interest on this issue is *Commonwealth v. Ruch,* 28 D.&C. 3d 488 (1984). In that case, the court held that unpublished newspaper photographs of an automobile accident, which did not reveal any informants, were not a "source of information" within the meaning of section 5942(a). Such photographs, taken in plain view and in a public area, were therefore discoverable in a criminal proceeding.

Applying the aforementioned law to the facts of this matter, it is clear that the photographs in

question are not protected by the Shield Law. Petitioners did not obtain the photographs through any inside information, tip or lead. Furthermore, the photographs were taken in a public area which was open to public view. Since the release of the photographs would not reveal any confidential source of information, the purpose of the Shield Law would not be served by granting a protective order. The Shield Law is therefore inapplicable herein.

Petitioners also claim that the photographs are protected by the First Amendment's reporter privilege. Unpublished photographs are discoverable under the First Amendment where they are (1) highly material and relevant to the litigant's claim, (2) necessary or critical to maintenance of the claim, and (3) not obtainable from any other source. *U.S. v. Criden,* 633 F.2d 346 (3d Cir. 1980).

The court determines that the photographs are highly material to plaintiff's claim because they accurately depict the intersection on the date in question. They also depict the position of the vehicles in relation to the intersection shortly after the accident.

The photographs are also necessary or critical to the maintenance of the claim. Since a factual dispute exists as to how the accident occurred and what directions the parties were traveling, the photographs are very important to resolve the disputed issues.

In addition, the photographs are not available from any other source. There was no indication made by either party or petitioners that other photographs of the accident scene exist. Based on the foregoing, the photographs are not protected by the First Amendment.

Petitioners' petition for a protective order must be denied.

574

## ORDER OF COURT

June 1, 1989, the preliminary objections of defendant, Brian R. Zeger, are denied. The petition for a protective order filed by petitioners, Markell DeLoatch and *Public Opinion,* is denied.