Chambers *v.* Montgomery, Appellant.

340 

Argued January 14, 1963. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Frank M. Jakobowski*, with him *White & Williams*, for appellants.

*Steven E. Halpern*, with him *Samuel Kagle*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, June 4, 1963:

On September 16, 1956, an altercation occurred on the lawn of the home of John Walsh, brother of Mary Montgomery. This altercation resulted in a serious injury to Joseph Chambers and he instituted an action of trespass against Charles and Mary Montgomery, husband and wife, alleging that they had committed an assault and battery against him, causing serious per-

sonal injuries. A jury trial resulted in a verdict for Mrs. Montgomery and for Chambers against Mr. Montgomery, in the amount of $6,500, being $4,000 compensatory damages and $2,500 punitive damages.

Montgomery moved for judgment n.o.v. or a new trial and, upon the refusal of his motions by the court en banc, judgment was entered on the verdict of the jury against him. This appeal followed.

In considering a motion for judgment n.o.v., the evidence together with all reasonable inferences therefrom, are considered in the light most favorable to the verdict winner. However, in considering the action of the lower court in granting or refusing a new trial, an appellate court will affirm, unless there has been a clear abuse of discretion, or an error of law which controlled the outcome of the case or the decision of the lower court. *Ischo v. Bailey,* 403 Pa. 281, 169 A. 2d 38 (1961); *Staszak v. Seibel,* 401 Pa. 494, 165 A. 2d 1 (1960); *Super v. West Penn Power Company,* 392 Pa. 159, 140 A. 2d 20 (1958); *Muroski v. Hnath,* 392 Pa. 233, 139 A. 2d 902 (1958).

In view of these well known and oft stated standards of review, the court below properly refused to enter judgment n.o.v. Appellant contends that he did not commit an assault and battery on appellee with the intention of inflicting bodily harm and that even if he did strike appellee, he was justified in doing so. The evidence, viewed in the light most favorable to the verdict winning appellee, discloses the following state of facts, as aptly summarized in the opinion of the court below. "The incident occurred on September 16, 1956, between 9:00 and 9:30 o'clock P.M. on the premises of defendant's brother-in-law, John Walsh, at 701 Surrey Lane, Glenolden, Delaware County, Pennsylvania. It followed a meeting that evening which had been set by John Walsh at his home with the parents of certain 10 or 11 year old children who had been in

an altercation with Walsh's minor son. During the course of the evening, Mrs. Edward Tyrell became engaged in a heated argument with John Walsh over the involvement of her son, and was thereupon asked by Walsh to leave. On her return home she reported the conversation to her husband who was there with Joseph Chambers, the plaintiff, and his two sons, Jack Chambers, 21 years of age, and Edward Chambers, 16 years of age.

"Edward Tyrell, unnoticed by his wife, proceeded to Walsh's home and called him outside. Shortly thereafter, Mrs. Tyrell noted her husband's absence and was concerned about him. She asked Jack Chambers, plaintiff's son, to go after Mr. Tyrell and bring him home. Shortly after Jack Chambers left, the plaintiff, Joseph Chambers, followed. When plaintiff arrived at the Walsh house he saw Tyrell lying on the ground unconscious and his son, Jack Chambers, and Walsh engaged in a fight on the lawn. As plaintiff bent over the pair on the ground to ask them to break, defendant, Charles Montgomery, struck him from behind, knocking him off balance and caused him to spin around. Whereupon the defendant struck a second and more severe blow which caused the plaintiff to completely lose his balance and slip and fall down an embankment, breaking his hip."

Needless to say, appellant's version of the incident was directly contrary to that of appellee. The jury, after a proper charge, chose to accept appellee's version and there was ample evidence supporting that acceptance. Such being the case, a verdict against appellant was proper, and not arbitrary and capricious, as contended by him.

Appellant's motion for new trial alleges as error the affirmance by the trial court of appellee's points for charge No. 1 and No. 2, and its refusal of appellant's point No. 3. None of these rulings was error.

Appellee's first point is as follows: "1. If the jury believes that the defendant or defendants intentionally struck the plaintiff from behind as described by the plaintiff and his witnesses, plaintiff is entitled to damages for the resultant injury." Appellant complains that this point allowed the jury to find for appellee without reference to any justification for the assault, merely by finding an intentional striking. Without more, we would agree with appellant's contention. The fact is, however, that although the trial court affirmed the point, it was not read to the jury as such. A reading of the entire charge indicates that the trial court carefully instructed the jury on liability and made it perfectly clear that the jury should find for defendants if they found the attack to be justified or privileged.

Appellee's second point is as follows: "2. If the jury believes the testimony of plaintiff and plaintiff's witnesses that the defendant, Charles Montgomery, remained silent in the face of an accusation that he had struck plaintiff, you may infer that his silence constituted an admission of that act."

The familiar rule that "silence gives consent" is applicable in civil as well as criminal proceedings. Henry, Pa. Evid. 4th Ed., §92. Here, the jury could properly find, from the evidence, that appellant remained silent in the face of an accusation and in circumstances requiring a reply, and therefrom infer the truth of the accusation. Appellant argues that the evidence discloses that he might not even have heard the accusation; this question was for the jury. Further, the trial court instructed the jury, immediately after reading the point, that the alleged silence was "a bit of evidence" and that its weight was for them to determine. We fail to perceive how this instruction, limited as it was and in the light of the entire charge, could be characterized as an error of law which controlled the outcome of the case.

Appellant further complains of the refusal by the trial court of his third point for charge. The point submitted was as follows: "3. The intentional infliction upon another of a harmful or offensive contact or other bodily harm by a means not intended to cause death or serious bodily harm is privileged for the purpose of preventing or terminating another's intrusion upon *the actor's possession of land or chattels,* if (a) the other's intrusion (i) is not privileged, or (ii) though privileged, the other intentionally or negligently causes the actor to believe his intrusion to be unprivileged, and (b) the actor reasonably believes that the other's intrusion can be prevented or terminated only by the immediate infliction of the harmful or offensive bodily contact, or other bodily harm, and (c) the means which the actor uses to prevent or terminate the intrusion are reasonable, and (d) the actor has first requested the other to desist from the intrusion and the other has disregarded the request." (Emphasis supplied.) The refusal of this point was proper. There was nothing in the case to warrant a charge on the privilege of protection of possession of land or chattels by appellant. The incident did not occur on appellant's land nor was there any element of protection of possession of chattels involved.

Appellant's final contention is that there was no evidence sustaining the award of punitive damages. " 'Punitive damages' are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct." Restatement, Torts, §908(1). Comment b to the above section states that "punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." In *Hughes v. Babcock,* 349 Pa. 475, 37 A. 2d 551 (1944), we said that exemplary damages must be based on " 'malicious', 'wanton', 'reckless',

'willful', or 'oppressive' conduct on the part of defendant". In determining whether punitive damages should be awarded, the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties should be considered. Restatement, Torts, §908, comment e; *Hughes v. Babcock,* supra.

Such consideration indicates that the grievous injury sustained by appellee might properly be termed an unfortunate freak. There is no evidence that appellant intended to inflict bodily injury on appellee or that he hoped for such a result. This is not to say that appellant is not liable for the damages resulting from the injury, but rather that the assault cannot be characterized as malicious, wanton, reckless or oppressive. The trial court, in its charge to the jury, approached the question of punitive damages as follows: "In this complaint that was filed, they ask for punitive damages. Now, while I don't know of any evidence which indicates it, however, I will charge you on it nevertheless." There followed a proper charge on punitive damages; the difficulty is in finding evidence to support the award. The trial court should have followed its stated inclination and taken the question of punitive damages from the jury.

This error does not, however, necessitate the grant of a new trial. We can rectify the error by striking from the judgment $2,500, the portion of it awarded as punitive damages, thereby obviating the necessity of a new trial. Act of May 20, 1891, P. L. 101, 12 P.S. §1164; *Richette v. Pennsylvania R.R.,* 410 Pa. 6, 187 A. 2d 910 (1963).

The judgment of the court below is reduced by the amount of $2,500, and, as so reduced, is affirmed.