480 A.2d 1101

Roman LANIECKI

v.

POLISH ARMY VETERANS ASSOCIATION OF LUCYAN
CHWALKOWSKI & Alexander Machowski.

Appeal of Alexander MACHOWSKI.

Roman LANIECKI

v.

POLISH ARMY VETERANS ASSOCIATION OF LUCYAN
CHWALKOWSKI, Alexander Machowski, Theodore S.
Przybyla, John Brycki, Ryszard Myszka.

Appeal of POLISH ARMY VETERANS ASSOCIATION,
Lucyan Chwalkowski.

Roman LANIECKI, Appellant

v.

POLISH ARMY VETERANS ASSOCIATION OF LUCYAN
CHWALKOWSKI, Alexander Machowski, Theodore S.
Przybyla, John Brycki, Ryszard Myszka.

Superior Court of Pennsylvania.

Submitted March 5, 1984.

Filed July 6, 1984.

414

416

Frank M. Jakobowski, Philadelphia, for Machowski, appellant (at No. 3309) and appellee (at Nos. 23 & 38).

Joseph T. Murphy, Jr., Philadelphia for Polish Army, appellants (at No. 23) and appellees (at Nos. 3309 & 38).

Milton S. Lazaroff, Philadelphia, for Laniecki, appellant (at No. 38) and appellee (at Nos. 3309 & 23).

Before ROWLEY, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

This case involves cross-appeals in a trespass action for libel brought by the plaintiff-Roman Laniecki against the Polish Army Veterans Association of Lucyan Chwalkowski, Post No. 12 (hereinafter the Association or Post) and Alexander Machowski.[1]

A jury found that the plaintiff had been libelled by the Association and Machowski, but, while awarding $5,000 in punitive damages, the veniremen granted no compensatory damages. At the post-verdict stage, Laniecki's motion for a new trial "as to damages only" was denied. Likewise, the Association's and Machowski's request for a new trial, or, in the alternative, for a judgment *non obstante veredicto* was refused. We affirm.

In deciding the propriety of the rulings that were made, we adhere to the following:

On appeal from the refusal of the trial court to enter judgment for the defendant-appellee *non obstante veredicto*, the sole duty of the appellate court is to decide whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner, the appellant here, the benefit of every favorable inference reasonably to be drawn from the evidence. *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980). All unfavorable testimony and inferences must be rejected.

1. Theodore S. Przybyla, John Brycki and Ryszard Myszka were named in the complaint, but Laniecki discontinued the suit against them prior to trial. (N.T. 95–96 & 447)

*Smith v. Kravitz,* 173 Pa.Super. 11, 93 A.2d 889 (1953). As to reviewing on appeal the grant or refusal of a new trial, we will not reverse the lower court's action " 'absent an abuse of discretion or error of law which controlled the outcome of the case.' " *Allison v. Snelling & Snelling, Inc.,* 425 Pa. 519, 521, 229 A.2d 861, 862 (1967); *Gougher v. Hansler,* 388 Pa. 160, 130 A.2d 150 (1957); *Lambert v. Durallium Products Corp.,* 364 Pa. 284, 72 A.2d 66 (1950).

*McDevitt v. Terminal Warehouse Co.,* 304 Pa.Super. 438, 442, 450 A.2d 991, 993–994 (1982), petition for allocatur denied October 29, 1982.

Keeping the preceding in mind, the following appears of record: At a special meeting of the Post, sometime in 1968, it was decided that a building would be erected to house various functions of the Post (e.g., banquets, weddings and meetings etc.). Mr. Laniecki was elected chairman of the building committee since he was in the construction business. In fact, when one of the subcontractors refused to complete the roof on the proposed structure, Mr. Laniecki did so at the request of the Post.

The procedure by which Laniecki received payment for the material and labor supplied consisted of his submission of bills to the building committee which authorized payment. However, the bills were presented to the board of directors of the Post, which met twice a month, and to the members at the monthly meeting for final approval. Up until the opening ceremonies on July 20, 1969, the procedure by which Laniecki received payment was adhered to and no one complained of the cost or the manner in which some of the bills were presented, e.g., on Laniecki's business stationery. This practice was continued when Laniecki was asked to perform some of the construction on the inside of the structure.

All parties agreed that the amount paid by the Post to Laniecki for work done was approximately $7,000.

Shortly after the completion of the building, Laniecki asked the commander of the Post to select a committee to

examine the bills he had submitted "because of the report of some people telling [him] that ... [he] must have made a bundle on that job." (N.T. 43) Consequently, he wanted to have a committee appointed to absolve him of any wrong. This was done and, at a 1969 meeting of the Post, resulted in a clearing of Laniecki's name of any impropriety.

This matter laid dormant until 1972 before it was resurrected by Alexander Machowski, the new Post commander, who also happened to chair the 1969 auditing committee that initially investigated Laniecki. Machowski informed the membership at a meeting that he had discovered "irregularities" in regard to the bills offered by Laniecki in support of the work done from 1968 to 1969.

Machowski selected a four-member committee, of which he was one, to go through the books a second time. Laniecki received notification from the recording adjutant of the Post as to what had transpired, and he asked that Laniecki be present at a membership meeting on July 7, 1972. Laniecki also was asked to produce for the meeting documentation relating to the "questioned receipts issued on [his] firm's forms in the general amount of $7,099.12 ... for the ultimate resolution of this matter." (N.T. 57) Laniecki responded that due to illness he would not be able to attend and asked that discussion on the matter be postponed. The Post, thereafter, notified Laniecki as to exactly what billing items were in dispute and that the subject would be taken up at a gathering of the membership on September 21, 1972.

Instead of appearing at the scheduled meeting, Laniecki had his wife type a 3-page reply that detailed the events encompassing the construction and the manner in which the Post authorized payment for his services. He made reference to his being cleared of similar charges by a 1969 committee. Lastly, he put the Post on notice that he considered the committee's 1972 inquiry "to be vicious and a besmirching of [his] name," for which he would seek legal redress unless the matter was cleared up at a monthly meeting of the Post. In actuality, Laniecki had been ex-

pelled from the Post for fighting with a member who had accused him of stealing money less than a month before he wrote the letter, and this was one of the reasons he did not attend the proceedings.

Although Laniecki obtained reinstatement from the national organization (SWAP) in 1973, he thought it best to transfer his membership to Post 121 in Camden, New Jersey after he refused to apologize to Machowski and others at the Post. Thereafter, during the latter half of 1973, Laniecki was elected commander of the Camden Post for 1974.

The next time Laniecki became aware of Post 12's accusations was prior to a meeting of the Camden Post in September of 1974. At that time, the vice commander advised him that Post 121 had received a letter from SWAP in New York informing it that Post 12 had objected to Laniecki receiving a gold medal of distinction for 50 years of service to the organization and having been elected commander of the Camden Post after less than 2 years as a member, which violated SWAP's constitution and Post 121's own rules. Attached to SWAP's communique was a copy of a letter on Post 12's stationery and bearing the signature of Alexander Machowski, its commander. It was typed in Polish, translated into English by the Berlitz Translation Service of Philadelphia at plaintiff's request and read to the jury by counsel for Laniecki. The letter consists of the following:

### POLISH ARMY VETERANS ASSOCIATION OF LUCYAN CHWALKOWSKI

Post No. 12

Philadelphia, May 6, 1974

Head Office SWAP
New York
Dear Comrade Commandant,

I would like to inform you that Post No. 12, on its monthly meeting, on Friday, May 3rd, carried out an

unanimous decision against distinction by the Head Office, of Mr. Romana Laniecki, Commandant Post No. 121, in Camden, N.J., represented by a gold medal of 50 years SWAP, of which we learned through a Newspaper "Nowy Dziennik" dated May 1st.

We think that Mr. Laniecki, who was penally displaced from Post No. 12, because of his vulgar behavior, undignified for a Polish Veteran, for the beating of two members and hurting the national feelings of another member, is not worth a reward, but on the contrary, a most severe condamnation [sic] and punishment through the Head Office.

*Worst of all, Mr. Laniecki embezzled Post No. 12, for over 7 thousand dollars, refusing to account for the money, which was used to build a construction at Polanka.*

We think that the Head Office should refuse to confirm the "election" of Mr. Laniecki, as Commandant of Post 121, of which he has been a member for 4 months only. SWAP's constitution, not just the rules of Post 121 or the rules of the Head Office, specifies that you have to be a member of the Post in question for at least two years.

All these happenings have a very demoralizing influence on the members of Post 12 and have shaken the authority of the Head Office also, not just the authority of Post 12, but among Polish people in Philadelphia, and among those who have a very big interest in our organization.

We hope that the Head Office will change its line of conduct and will treat Mr. Laniecki according to our constitution, to stop a tide of discontent and criticism towards that Head Office.

> With friendly regards,
> Alexander Machowski
> Commandant

(Emphasis added)

Both letters were read to the membership at the Camden Post 121 meeting by the vice commander at Laniecki's

request, for prior to that point he had not received a copy of either writing.

As Post 12's letter was being read in Polish, which Laniecki understood to mean, especially the italicized portion *supra*, that he had been accused of "embezzl[ing] over seven thousand dollars," (N.T. 79), he, along with others in ear-shot of the reading, were shocked and the members refused to accept the letters and had them returned to SWAP. Also, Laniecki was asked to remain as commander, but he refused to do so and resigned. Thereafter, on October 15, 1974, the instant libel suit was commenced by means of a complaint in trespass.

After a five day trial, the jury returned a verdict in favor of the plaintiff for punitive damages in the amount of $5,000.00, but it awarded no compensatory damages. In the course of doing so, the jury's foreperson wrote at the bottom of the "Interrogatories to the Jury" form sheet provided by the trial judge, in regard to its reasons for awarding punitive damages only, that:

> He who steals my purse, steals trash; but, he who steals my reputation steals my life. Therefore, as ... jurors we feel that no amt. of gold or silver can compensate for a man's reputation & if Mr. Laniecki is publically [sic] cleared and reinstated into (his) Post 12 or the Post of his choice this would be reward enough. We also wish to give nothing for libel, but grant $5,000 for punitive damages.[2]

The verdict of the jury was reduced to a judgment and this appeal followed.

2. Although inartfully done, we wish to point out that the foreperson was paraphrasing a section from Shakespeare's *Othello*, Act III, Scene 3, which reads:

Good name in man and woman, dear my lord,
Is the immediate jewel of their souls:
Who steals my purse steals trash; 'tis something, nothing;
'Twas mine, 'tis his, and has been slave to thousands;
But he that filches from me my good name
Robs me of that which not enriches him,
And makes me poor indeed.

The first issue we will address concerns the post-verdict court's denial of a new trial. The plaintiff asks us to grant him a new trial limited to damages on the ground that only a "misunderstanding of the law" could have caused the jury to award him no "substantial damages." (Plaintiff's Brief at 6) In responding to this claim, we will be addressing defendants' complaints that because the law in Pennsylvania does not condone the awarding of punitive damages in the absence of a provision for compensatory damages, the trial court erred in affirming the award of the jury which "is clearly contra the law of damages in this Commonwealth." (Defendants' Brief at 3 & 11) We believe that the defendants are misinformed as to the law in this jurisdiction as to the interrelationship of punitive and compensatory damages.[3]

■ To start with, we observe that Pennsylvania has embraced Section 908 of the Restatement (Second) of Torts and the Comments thereunder as to punitive damages. *Focht v. Rabada,* 217 Pa.Super. 35, 268 A.2d 157 (1970). In particular, Comment *c (Extent and nature of harm)* informs us:

> Compensatory damages in a trifling amount and substantial punitive damages in the same verdict are not necessarily inconsistent. It is essential, however, that facts be established that, apart from punitive damages, are sufficient to maintain a cause of action.

What the preceding means is that a suit for punitive damages cannot stand on its own, despite the rendition of such an award by a jury, "where actual damages have not been suffered" by the aggrieved party that would entitle him, if he so wished, to sue for compensatory damages as well.

**3.** In particular, we wish to point out defendant-Machowski's counsel's erroneous statement that "[t]here are no reported cases in the state of Pennsylvania where the jury has not awarded compensatory damages and allowed punitive damages." (Defendant-Machowski's Brief at 11) *See Rhoads v. Heberling,* 306 Pa.Super. 35, 451 A.2d 1378 (1982); *see also Fisher v. Volz,* 496 F.2d 333, 347–348 (3rd Cir.1974) (holding that in federal civil rights cases punitive damages may be awarded even without an award of compensatory damages).

*Hilbert v. Roth,* 395 Pa. 270, 275, 149 A.2d 648, 652 (1959). The reason is that "[t]he right to punitive damages is a mere incident to a cause of action—an element which the jury may consider in making its determination—and not the subject of an action in itself." (Citation omitted) *Id.*

■ In the context of "compensatory damages," one has sustained a *harm* for which a cause of action for a tort may be instituted and recovery had "for that form of mental distress known as humiliation, that is, a feeling of degradation or inferiority or a feeling that other people will regard [you] with aversion or dislike. This state of mind may result from ... a defamatory statement ...." Restatement (Second) of Torts, § 905, Comment *d.* Such was the case here, where counsel for the plaintiff informed the trial court in chambers that his case was confined to a claim for damage to reputation, i.e., "humiliation and embarrassment." (N.T. 151) There was no claim being asserted for "physical or emotional illness resulting from this incident ... complained of" and the jury was so informed. (N.T. 156)

■ Thus, if the plaintiff proved that he had been harmed by the writing attributed to the defendants (i.e., established liability so as to *expose* them to possible compensatory damages,) it was still within the jury's discretion whether to make such an award. *Rhoads v. Heberling,* 306 Pa.Super. 35, 44, 451 A.2d 1378, 1383 (1982) ("... the jury ... could award punitive damages to the plaintiff[ ] ... even if no compensatory damages were awarded[.]"); Restatement (Second) of Torts, § 905, Comment *d.*

Instantly, the trial judge instructed the jury that it need not enter an award for damages, either compensatory or punitive, but if it did it had to find, initially, that the defendants libelled the plaintiff. To-wit:

THE COURT: Ladies of the jury [—it was an all female jury], you are about to make your decision with reference to liability and if necessary damages in this case. The fact that I will charge you in a few moments about damages should not be interpreted by you as a sugges-

tion that the planitiff [sic] is entitled to damages. I make no such suggestion one way or the other. You must first consider the issue of liability. Only if you find that the defendants are libel [sic] to the plantiff [sic] in damages should you consider the issue of damages.
(N.T. 2.149–2.150)

At trial, the plaintiff established that he had been cleared by a 1969 committee of any wrongdoing in regard to the method of his billing Post 12 for his services. Konsntany Netter, a member of that 1969 group, testified that the committee found "nothing wrong, everything in order. All bills were in order." (N.T. 296) Likewise, the chairman of the 1972 investigating committee (Joseph Loza) and two members of the original building committee (Stanley Kreft and John Conrad) all reported that they found no impropriety with the manner in which the plaintiff submitted his bills to the Post. (N.T. 213, 273, 282 & 319)

Also, there was no real dispute over whether the May 6, 1974 letter by Machowski to SWAP was *read* at a Post 12 meeting. (*See* N.T. 206–207) In fact, the defendants admitted as much in their answer to plaintiff's complaint. (*See* Defendants' "Answer to Complaint and Counterclaim," Points 3 & 4)

As for the effects of the letter, the plaintiff and his witnesses consistently painted a picture of a man who "became very emotional and very different" after its contents became known throughout the Polish community. As stated by plaintiff's wife, before the letter "both were very active in the Polish community," but thereafter they "had to sort of withdraw from social life." (N.T. 173 & 174) Nonetheless, although the plaintiff no longer belonged to the Polish Congress, he did remain associated with the Polish Heritage Society and the Polish National Alliance. (N.T. 195, 196–197)

From the tenor of the testimony elicited, this Court detects a note of discontent, albeit subtle, between the plaintiff and Machowski, who seems to have been the driving force behind the reinstitution of the 1972 investigation

and the formulation of the May 6, 1974 letter. A document which the plaintiff, the expert who translated the letter (Polish to English) and all of the witnesses who testified in his case-in-chief uniformly interpreted, i.e., the italicized portion reproduced *supra,* to mean that the plaintiff was accused of "embezzling" money from the Post and he was refusing to account for it. (N.T. 160–161, 179–180, 182, 209, 275, 297, 307 & 351)

■ Although the defendants' expert interpreted the phrase in question to connote more of an "abuse," "misuse" or "malversion" of Post 12's $7,000, we find, as the trial court did, that the issue was not whether the term used meant "embezzlement," but whether or not it was libelous. This matter, in the first instance, was decided to be so by the court before being submitted to the jury. *Bogash v. Elkins,* 405 Pa. 437, 176 A.2d 677 (1962).

■ Thus, from the aforesaid, we have no difficulty in concluding that the plaintiff made out a "cause of action" for compensatory damages. *See* Restatement (Second) of Torts, § 908, Comment *c.* This, however, does not guarantee a claimant the recoupment of damages. From our perusal of the applicable law on the subject, there appears to be no discernible yardstick by which to measure the judiciousness of an award for damages (be they punitive or compensatory) by a jury. *See Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355 (1963); *International Electronics Co. v. N.S.T. Metal Products Co.,* 370 Pa. 213, 88 A.2d 40 (1952). Nonetheless, there is precedent for sustaining an award for punitive damages, which we will do here, in the absence of an award by a jury for compensatory remuneration. *See Rhoads v. Heberling, supra;* Restatement (Second) of Torts, § 908, Comment *c.*

■ We see no reason to alter the jury's Solomon-like decision that on the one hand vindicates the plaintiff's right to be free from unwarranted assaults upon his good name, while at the same time punishing the defendants for their outrageous conduct that may deter others from similar

conduct in the future. Restatement (Second) of Torts, § 908. Our conclusion dispenses with the need to remand for a new trial, as requested by both sides, for we find the award to be warranted under the circumstances and not the product of "some misapprehension of the law or the evidence" by the jurors. *Compare Gudat v. Heuberger*, 275 Pa.Super. 535, 419 A.2d 30 (1980).

The remaining claims raised by the defendants concern the charge to the jury and a purportedly prejudicial remark made by the court during the course of the trial.

As for the court's instructions, defendants argue that the trial court erred in not properly charging the jury on libel, qualified privilege and publication, as well as allegedly incorrectly telling the jury that any verdict in favor of the plaintiff must be against both defendants where, according to the defendants, the evidence at trial raised a presumption that the defendant Post *did not* authorize Machowski to write the letter to SWAP in New York as it was published.[4] We disagree.

Addressing the last contention first, we note that in the *joint* answer filed by the "Attorney for the *Defendants*," it was admitted that:

3. ... the membership of the defendant Post authorized and directed the defendant Alexander Machowski as commander to write said letter [to the head office of SWAP in New York]. This direction followed a regular monthly meeting at which time the subject matter was discussed and a resolution passed by the majority of the quorum present. The letter followed the instruction of the body and was sent on the advise of the defendant Post's legal counsel.

4. ... the membership at its regular meeting heard evidence of plaintiff's eractic [sic] behavior, of his violent

---

**4.** At the appellate level, unlike at trial, each defendant is represented by separate counsel unassociated with the other. This is the reason for the averment that Machowski was not acting with the consent of Post 12 when the letter of May 6, 1974 was sent to SWAP in New York.

physical attack on two fellow members and of the refusal to account for some $7,000 of the defendant Post funds which were entrusted to the plaintiff. Following the presentation of such evidence at the meeting the members voted to have plaintiff stricken from its roles [sic] as a member.

Accordingly, the defendants' admission in their responsive pleading that the letter of May 6, 1974 was "discussed" with and approved by the membership at a monthly meeting, see Pa.R.Civ.P. 1029(a) & (b), forecloses either from arguing to the contrary on appeal. See Pa.R.Civ.P. 1032 ("A party waives all defenses and objections which he does not present either by preliminary objection, answer or reply ...."). The fact that the letter was read to some of the members of Post 12 was corroborated by Joseph Loza, who was present at the meeting in question and testified that Machowski "read that letter loud, about Mr. Laniecki embezzling seven thousand dollars." (N.T. 207) Although the minutes of the meeting in question did not reflect the reading, it was conceded by even the defendant-Machowski that the recording secretary for the Post neglected to put everything in the minutes as to what was discussed in regard to the content of the letter to be sent to SWAP in New York, i.e., the subject of the plaintiff refusing to account for seven thousand dollars. (N.T. 428–429; see also N.T. 229, wherein Joseph Loza, who was at the meeting, testified that the recording secretary did not take down everything at the monthly meetings)

■ Defendant-Machowski next avers that the court "d[id] not even mention publication" to the jury. (Defendant's Brief at 20) This averment is contravened by the record, which reveals that the trial court informed the jury:

No cause of action for libel arises until there has been a publication of the defamatory matter, publication being defined as the communication of a defamatory matter either intentionally or by a negligent act to one other than the person defamed. (N.T. 2.157)

Evidence was presented at trial that Joseph Loza heard the May 6th letter read by Machowski at a Post 12 meeting. Also, there was evidence introduced that this same document was read at a Camden Post 121 meeting, the effect of which was "understood as being defamatory of the plaintiff." *Gaetano v. Sharon Herald Co.*, 426 Pa. 179, 181, 231 A.2d 753, 755 (1967). Therefore, we have no difficulty in sustaining the propriety of the instruction given on "publication." Restatement (Second) of Torts, § 577.

Machowski also attacks the instructions on the ground that the trial court "fail[ed] to charge the jury that the Plaintiff had the burden of proving that the [qualified/conditional] privilege was abused and did not give them any examples on what would constitute abuse of publication." (Defendant's Brief at 19)

Again, as before, the record belies Machowski's position. For example, the jury was informed that: "The plaintiff in this case has the burden of proof, that means that the plaintiff must prove his case by a preponderance of the evidence." (N.T. 2.151) Later on in the charge the trial judge stated: "The defendants in this case have no burden of proof.... As I have just said the plaintiff has the burden of proving that the material in question was not true." *Id.* Accordingly, reading the charge in toto, *see Smith v. Chardak*, 291 Pa.Super. 173, 435 A.2d 624 (1981), we perceive no error being committed by the trial court in dealing with the subject of "conditional privilege." (*See* N.T. 2.158) *Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583 (1980). Also, we have discovered no requirement in the law, nor has counsel for Machowski pointed out any to us, which mandates that the jury be given an "example" for what constitutes an "abuse of publication." Furthermore, counsel having failed to take a specific exception to the charge on such a ground renders it waived. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 225, 322 A.2d 114 (1974).

The final assault on the instructions concerns the allegation that the court should not have informed the jury to be preoccupied solely with the effect the May 6, 1974 letter

"would naturally produce in the minds of other persons who read the letter and heard that letter." Rather, defendant-Machowski seems to be arguing that if the jury had been instructed that a word in the letter ("Naduzycia") could also be interpreted to mean that the plaintiff "was either wasting money or using it foolishly and that he failed to account for it[,]" the jury would not have found him guilty of defaming Laniecki. (Defendant's Brief at 15)

We disagree.

It was not encumbent upon the jury to determine whether the word at issue, as so captioned by Machowski, meant "embezzlement." On the contrary, the law merely requires that the communication be one that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts, § 599. And, "[t]he meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." Restatement (Second) of Torts, § 563. The trial court charged the jury in accordance with the aforesaid. (N.T. 2.151) Such was correct inasmuch as the plaintiff and all of his witnesses, who were asked to interpret the phrase reproduced *supra* in the letter, consistently testified that it meant that the plaintiff had been accused of "embezzling" money from Post 12 and refused to account for it.

Even the defendant's expert witness could not deny that the letter accused the plaintiff of "misuse" of Post 12's monies.

Thus, Machowski's "libel" protestation is found wanting and is denied.

The last issue preserved for our review relates to the trial court's remark, made in response to Machowski's unsolicited statement that the plaintiff's lawsuit was "taking the taxpayer's money," that:

... It is a good thing about this country, and that is you don't have to be a Carol Burnett to have access to the

Court. The Plaintiff has just as much right as anyone else to have his issues decided. So, therefore, it is not up to you to characterize this [proceeding] as taking of taxpayer's money.

(N.T. 388)

When counsel for the defendants heard this, he moved for a mistrial at sidebar. The trial judge denied the motion and granted counsel's request for a cautionary instruction, which counsel stated he was "entitled to." Namely:

THE COURT: Ladies and Gentlemen of the Jury, I wish to caution you to a remark I just made. It was not intended in any way to suggest that this case has any relationship to any other particular cases. This case had to be judged on the evidence as it is presented to you. And on the law, as the Court gives it to you. The statement that I made a few minutes ago, was merely intended to suggest that the Court does not believe that these proceedings are a waste of the taxpayer's money. And that the Court believes that is desirable and the law treat [sic] everyone equally, in terms of their excess [sic] to the Court. So, you can or I would suggest that you just put it out of mind, what I said a few minutes ago. And listen to the evidence and apply the law as will be given to you. (N.T. 389–390)

Further, in its charge, the trial court told the jury:

I would emphasize to you that in a Court of law every case stands on its own feet and you should not be influenced by anything which you have read in the newspapers or heard on the television about other cases. When you took an oath as jurors you swore to the fact that you would decide this case based on the evidence presented in court and the law as given to you by this Court. The parties in this case have reason to expect that you will perform your sworn duties conscientiously. I mentioned a recent libel case involving Carol Burnett. I direct that you disregard that remark. It has no relevance of [sic] connection or similarity to this case. That

remark was unfortunate so completely disregard it and dismiss it from your minds.

(N.T. 2.166–2.167)

Even if we were to admit, for the sake of argument, that the reference by the trial court to Carol Burnett was improper, we find that the instructions were more than adequate to eradicate any prejudice the defendants may have suffered. As a result, Machowski's counsel's characterization of the trial court's efforts in this regard as "feeble" is not warranted, for there is no indication that the defendants' right to a fair and impartial trial was impaired by the jury's exposure to the complained-of statement. *Compare Duffy v. Griffith,* 134 Pa.Super. 447, 4 A.2d 170 (1939).

Affirmed.