516 A.2d 1

Edward KIRKBRIDE and Carole Kirkbride

v.

LISBON CONTRACTORS, INC., Appellant.

Superior Court of Pennsylvania.

Argued Feb. 24, 1986.

Filed Aug. 12, 1986.

Clarification Denied Oct. 16, 1986.

David G. Battis, Philadelphia, for appellant.

William H. Lamb, West Chester, for appellees.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, WIEAND, McEWEN, OLSZEWSKI, DEL SOLE, MONTEMURO and TAMILIA, JJ.

CIRILLO, President Judge:

The issue presented to this Court is whether a jury's award of punitive damages must bear a reasonable relationship to the amount awarded as compensatory damages. Specifically, did the trial court err when it instructed the jury to the effect that no such relationship need exist? [1]

The subject jury charge followed a trial initiated by the Kirkbrides, owners of property that is part of a wooded, thirty-acre tract in East Caln Township, Chester County. The Kirkbrides' lot fronts for about 120 feet on Norwood Road and extends across a ridge back to a former railroad easement that runs parallel to the Brandywine Creek for more than 1000 feet behind their property. In 1977, the Uwchlan Township Municipal Authority obtained the former railroad easement for construction of a sewer line. Later

---

1. Because of our disposition of this issue, we need not reach the merits of appellant's challenges to the excessiveness of punitive damages and to the award of compensatory damages for the regrading of the embankment on the Kirkbrides' property.

that same year, Chester County took the easement outright to build a bike path and jogging trail over the sewer line. The Uwchlan Township Municipal Authority subsequently contracted with appellant, Lisbon Contractors Inc., to construct the sewer line and bike path.

Work on the project started in February, 1978. Early in the job, appellant's bulldozer turned onto the Kirkbride's property from the sewer line right of way and drove toward Norwood Road, making a clearing for about 1,200 feet. This clearing was later used as a storage area. During the restoration work, after the sewer line was completed, appellant pulled down an 800 foot embankment on the Kirkbride property, immediately parallel to the construction right of way, and regraded the slope to meet the adjoining hillside along the sewer line and bike path.

In June of 1979, the Kirkbrides instituted a suit in trespass as a result of appellant's actions. Following trial, the jury returned a verdict of $7,000 in compensatory damages and $70,000 in punitive damages for the land marred by the bulldozer, and $12,000 in compensatory damages, but no punitive damages, for the embankment which was regraded. Appellant timely filed motions for judgment n.o.v. and a new trial which were denied after argument. This appeal followed.

Appellant had requested the trial court to instruct the jury that the amount of an award of punitive damages must be reasonable and may not be disproportionate to any award of compensatory damages. The trial court refused to so instruct and instead, over appellant's objection, charged the jury as follows:

> The amount you assess as punitive damages need not bear any relationship to the amount you choose to award as compensatory damages, and it is not necessary that you award compensatory damages to the plaintiffs in order to assess punitive damages against the defendant so long as you find in favor of the plaintiffs, as we tell you to do, on the question of liability.

Appellant contends that this charge was in error and necessitates the grant of a new trial.

We observe that this challenged instruction was taken from a bracketed portion of the Pennsylvania Suggested Standard Jury Instruction (Civil) § 14.02, Subcommittee Draft (September 26, 1976), relating to the assessment of punitive damages and was given by the trial court in reliance on this Court's decision in *Rhoads v. Heberling*, 306 Pa.Super. 35, 451 A.2d 1378 (1982). In *Rhoads,* the trial court instructed the jury that the amount of punitive damages awarded need not bear any relationship to the actual damages rendered. The panel, in holding that this instruction was proper, opined that such a charge was consistent with the Restatement (Second) of Torts § 908, Comment C (it is not essential to the recovery of punitive damages that the plaintiff should have suffered any pecuniary or physical harm) which, in the panel's view, was adopted by this Court in *Focht v. Rabada,* 217 Pa.Super. 35, 268 A.2d 157 (1970). Actually, *Focht* cited *Chambers v. Montgomery,* 411 Pa.Super. 339, 192 A.2d 355 (1963) as adopting the Restatement view. Neither case, however, even remotely considered that portion of Section 908 regarding the compensatory-punitive relationship; only an interpretation of the word "punitive" was involved. The panel in *Heberling* also relied on the model charge prepared by the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions. *See also Laniecki v. Polish Army Veterans Association,* 331 Pa.Super. 413, 480 A.2d 1101 (1984) (sets forth the rule adopted in *Rhoads* ). In no case, though, has the Supreme Court approved or accepted its own committee's proposed instruction. As a matter of fact, the draftsmen of this model charge admit that it "departs ... from what may be considered as the existing Pennsylvania law on punitive damages." Pennsylvania Suggested Standard Jury Instruction (Civil) § 14.02, Subcommittee Note at 3, 7–8.

Indeed, several earlier Supreme Court decisions held that the amount of punitive damages must bear a reasonable relationship to the award of compensatory damages. *See*

*Hughes v. Babcock*, 349 Pa. 475, 37 A.2d 551 (1944); *Givens v. W.J. Gilmore Drug Co.*, 337 Pa. 278, 10 A.2d 12 (1940); *Thompson v. Swank*, 317 Pa. 158, 176 A. 211 (1934); and *Mitchell v. Randal*, 288 Pa. 518, 137 A. 171 (1927). These Supreme Court decisions were cited as authority and followed by our Court in *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (1983), and *Feld v. Merriam*, 314 Pa.Super. 414, 461 A.2d 225 (1983), *reversed on other grounds*, 506 Pa. 383, 485 A.2d 742 (1984). They were also discussed in the case of *Daley v. John Wanamaker, Inc.*, 317 Pa.Super. 348, 464 A.2d 355 (1983). To date, none of these cases has been overruled by the Supreme Court. Rather, their viability has recently been confirmed by a plurality decision of our Commonwealth's highest court in *Martin v. Johns-Manville Corporation*, 508 Pa. 154, 494 A.2d 1088 (1985). In *Martin*, Justice Hutchinson, joined by Justice Flaherty, reiterated that punitive damages must bear a reasonable relationship to actual compensatory damages. Justice McDermott, who filed a concurring opinion, did not take issue with Justice Hutchinson's statement of the law concerning the relationship between punitive and compensatory damages. Justice Papadakos joined Justice McDermott while Chief Justice Nix and Justice Zappala concurred in the result and Justice Larsen did not participate.

This is not to suggest that the reasonable relationship test is immune from valid criticism, which is particularly sharp in the defamation context. Detractors see a glaring flaw in the test's patent reliance upon the compensatory award as a reliable indicator of the extent of the wrongdoing. Essentially, it is urged that a plaintiff's failure to recoup a high compensatory award does not necessarily mean that defendant's wrongdoing was not so egregious as to warrant a high punitive award. F. Warren Jacoby, *The Relationship of Punitive Damages and Compensatory Damages in Tort Actions*, 75 Dick.L.Rev. 585, 607 (1970–1971) contains this lament:

A test or ratio [which compares the punitive and compensatory figures awarded] must rely on a presumption that the amount of actionable, provable injury is in direct correlation with the degree of malicious or wanton behavior exhibited by the defendant. While that presumption may be valid in certain situations, it has no place in areas of the law such as defamation. A defendant may entertain the most malicious thoughts and intentions while defaming the plaintiff, yet, if the plaintiff has a sound reputation, there is a great possibility that he will suffer little or no observable injury.

*See generally Prosser and Keaton on the Law of Torts* at pp. 14–15 (5th ed. 1984).

Even in the defamation context, however, we are of the view that the drawbacks inherent in the rigidity in its application are outweighed by the benefit reaped: stability. By insisting upon a reasonable relationship between compensatory and punitive damages, there remains intact an analysis of the ratio between the amounts awarded. True, this method of numbers comparison must itself be loosely applied to account for the variables in each case. Nonetheless, it succeeds in keeping awards within shouting distance of each other from one case to the next. Jurors are thereby precluded from awarding punitive damages on the basis of passion, prejudice, or improper motives.

It has been suggested that even the most carefully considered test for appellate review of jury awards may nonetheless allow for a mere substitution of the court's judgment for that of the factfinders. *Punitive Damages L & Prac.* § 5.39. Realistically, then, we are at a loss as to how a tangible figure can be assigned to punitive damages when the defendant's wrongdoing is considered separate and apart from the compensatory award. Deprived of any anchoring force, each case is set adrift on its own, thoroughly void of context. If it is the conclusion of a jury that X wrongdoing equals Y punitive dollars, upon what basis are we to meaningfully review that conclusion on appeal? To abandon the test and examine the wrongdoing in iso-

lation would be to place the harm in a hot air balloon and cast the sandbags overboard. The sky would be the limit, and as an appellate court we would be left clutching thin air, possessing nothing of substance against which to scrutinize punitive awards.

■ We will therefore continue to follow the lead of the Supreme Court in holding that an award of punitive damages must bear a reasonable relationship to the amount awarded as compensatory damages. A test such as this, which provides that the punishment to a defendant and its deterrent effect on society be related to the nature and extent of the plaintiff's injuries, enables the court to temper the amount of punitive damages awarded yet insure that justice is served. To the extent that the yet-to-be-adopted Standard Jury Instructions impute a contrary intention to the Supreme Court, it is our fervent hope that the Court will take the model charge by the horns and either embrace it or cast it aside.

■ It is clear under the present state of the law that the trial court erred in its charge on punitive damages and that such error was prejudicial to appellant necessitating a new trial. However, since the issue of liability was fully and fairly tried, we limit the new trial solely to the issue of damages. Reversed and remanded for proceedings consistent with this opinion. Jurisdiction is not retained.

McEWEN, J., files a concurring and dissenting opinion.

OLSZEWSKI, J., files a dissenting opinion, joined by DEL SOLE, J.

DEL SOLE, J., files a dissenting opinion.

McEWEN, Judge, concurring and dissenting:

The depth of the respect in which the members of this Court hold their colleagues of the majority causes me to be hesitant to express a differing view, but I am, nonetheless, compelled to, very respectfully, dissent.

Parenthetically, may I note that I embrace, as does my learned brother Judge Peter Paul Olszewski, the position that an award for punitive damages need not bear any relationship to the amount of the award of compensatory damages and that I do so for all the reasons that such a view was adopted by the drafters of the Restatement (Second) of Torts as Section 908. Our Supreme Court has, however, as the majority correctly states, declared that such a relationship must exist and that the jury must be so instructed. Thus, I must on that issue march with the majority.

It is upon another issue that I hear a different drummer. A careful examination of all of the testimony offered at the trial causes me to conclude that the amount of punitive damages awarded actually bears a reasonable relationship to the compensatory damages awarded. Thus, the erroneous instruction—that the amount of "punitive damages need not bear any relationship to the amount" of compensatory damages—was of no consequence, and, in the terms of the trade, was harmless error. Even but a quick glance at the trial testimony makes it evident that it was not the faulty instruction, nor the tortious conduct that inspired the award of punitive damages. Rather, the contempt and arrogance displayed by the representative of the contractor triggered that award.

It is undisputed that finality is a fundamental goal of the civil justice system and I am reluctant to abandon that goal and discard the verdict of the jury in the absence of serious *and* harmful error. The majority, however, holds that the prevailing party, having proceeded through the stage of pleading, through all the pre-trial procedures including discovery, and through all of the effort that accompanied the preparation for and conduct of the trial, must now convince yet another jury that just redress may only be provided by substantial awards. As a result, the new trial ordered by the majority composes, for the losing contractor, a windfall, and, for the prevailing property owners, a dreadful inequity.

And, thus, it is that I would affirm the Order of the distinguished Judge Charles B. Smith.

OLSZEWSKI, Judge, dissenting:

I must disagree with the majority's holding that an award of punitive damages must bear a reasonable relationship to the amount awarded as compensatory damages. I believe that the better course would be to acknowledge the different purpose served by each type of damages and to adopt the view of the Second Restatement of Torts. The Restatement's section on punitive damages reads:

(1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.

(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

Restatement (Second) of Torts Sec. 908. Comment c to that section states that "it is not essential to the recovery of punitive damages that the plaintiff should have suffered any harm, either pecuniary or physical." *Id.* comment c.

The considerations given by the Restatement for assessment of punitive damages provide ample means by which punitive awards may be scrutinized. This view allows for greater flexibility than the one adopted by the majority today without abandoning stability. For these reasons, I respectfully dissent.

Joined by DEL SOLE, J.

DEL SOLE, Judge, dissenting:

While I join in the Dissenting Opinion of my colleague, Judge Olszewski, I write separately to take issue with the Majority's analysis of the punitive damage question.

The Majority, in reviewing the history of the relationship between punitive and compensatory damages in Pennsylvania, is correct in pointing out that early Supreme Court decisions required such a relationship. Further, the Majority is correct in pointing out that the concept of no need for a relationship between actual and compensatory damages is set forth in Restatement (Second) of Torts § 908(2). There, as my colleague, Judge Olszewski clearly states, punitive damages are awarded for conduct and harm, and no relationship between compensatory and actual damages is required.

Where the Majority goes astray in its analysis is in relying upon the plurality opinion of Mr. Justice Hutchinson in *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985), an opinion that obviously was not joined in by a majority of the members of the court. The error in this analysis is particularly evident in light of *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984), where Mr. Justice McDermott writing for a unanimous Supreme Court stated as follows:

> This Court has embraced the guidelines of § 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages:
>
> 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' *See Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355 (1963). Punitive damages must be based on conduct which is ' "malicious", "wanton", "reckless", "willful", or "oppressive",....' Further, one must look to 'the act itself together with all circumstances including the motive of the wrongdoers and the relations between the parties....'

*Id.*, 506 Pa. at 395, 485 A.2d at 747–748.

Thus, it is readily apparent that the Supreme Court of Pennsylvania adopted Restatement (Second) of Torts § 908(2) to govern the issue of punitive damages. The reliance upon *dicta* in Mr. Justice Hutchinson's Opinion in

*Martin,* (joined by one other Justice) is reading too much into the decision of that case. All other Justices that voted in the *Martin* case concurred in the result. The result was an affirmance of the trial court's decision refusing to submit to the jury the issue of punitive damages on the basis that there was insufficient evidence to establish the type of conduct necessary to allow that issue to go to the jury. The Opinion stands for nothing more.

When one views *Martin,* in light of *Feld,* one must clearly recognize that the Restatement section controls and that pursuant to the comments thereto, as pointed out by my colleague, Judge Olszewski, the charge given by the trial court in this case was clearly proper.

The question then becomes whether or not the punitive damage award rendered by the jury is based upon the type of conduct which permits such an award and whether or not the amount awarded bears a relationship to the conduct of the defendant which the award is seeking to prevent, and the harm (not damages) suffered by the plaintiff. When viewed in this light, it is apparent that the punitive damage award in this case was proper and not excessive and should, therefore, be affirmed.