## Kerchner v. Naill

*William J. Peters,* for plaintiff.
*Henry O. Heiser,* for defendant.

KUHN, *J.*, January 18, 1989—On May 21, 1987, a wrongful death and survival action was filed for both compensatory and punitive damages arising out of the death of Karen E. Gilliam. On October 10, 1986, at approximately 4:29 p.m., a dump truck owned by defendant, Donald B. Smith Inc., and being operated by defendant, David A. Naill II, was traveling in an easterly direction of Pennsylvania Route 194. As the truck approached the intersection of Route 194, Mount Pleasant Road and Narrows Drive, it braked severely, crossed into the westbound lane and collided with the car being driven by decedent. The collision resulted in defendant's death.

Defendants have filed a motion for summary judgment seeking dismissal of the claim for punitive damages. As we have stated before, summary judgment is available under Pa.R.C.P. 1035 when the pleadings and additional record documents, considered together, reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Such disposition is only granted in cases where the right is clear and free from doubt. The evidence must be reviewed most favorably to the non-moving party, and any doubts must be resolved against the entry of judgment. *Shadle v. Bollinger,* 28 Adams Leg. J. 23, 25 (1986).

The claim for punitive damages is premised upon Naill's driving while allegedly under the influence of alcohol. Smith's liability arises vicariously and because of its alleged failure to curtail an alleged common practice of drinking and driving by its employees. Defendants argue that we must follow the position of the lead opinion in *Martin v. John Manville Corporation,* 508 Pa. 154, 494 A.2d 1088

(1985) authored by Mr. Justice Hutchinson in determining the requisite mental state on the part of a defendant before punitive damages can be imposed. With all due respect we must disagree.[1]

In *Martin,* the court concluded that the evidence concerning the defendant's action did not rise to the level of recklessly indifferent conduct which would permit imposition of punitive damages. One justice joined the lead opinion. Two justices concurred in the result without opinion. Two justices concurred in the result but issued a concurring opinion criticizing the standard announced in the lead opinion. One justice did not participate at all in the case.

A review of the leading punitive cases does not support defendant's position. In *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984), five members of the Supreme Court, in a unanimous opinion, stated:

"This court has embraced the guideline of section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages ... See *Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355 (1963). Punitive damages must be based on conduct which is 'malicious, wanton, reckless, willful, or oppressive ...' *Id.* at 344-5, 192 A.2d at 358, citing *Hughes v. Babcock,* 349 Pa. 475, 37 A.2d 551 (1944)." 506 Pa. at 395, 485 A.2d at 747-8.

The Restatement (Second) Torts provides:

"§908. Punitive Damages

"(1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future;

---

1. Our analysis is supported by *Irvins v. Glotex Corp.,* 115 F.R.D. 159 (E.D. Pa. 1986).

"(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."

Comment (b) to section 908 notes that:

"Reckless indifference to the rights of others and conscious action in deliberate disregard of them (see section 500) may provide the necessary state of mind to justify punitive damages."

Defendants contend that reckless or wanton conduct requires something close to an intentional action. However, *Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 212 A.2d 440 (1965) suggests otherwise. There appellant argued that wanton misconduct existed only when the actor had actual knowledge of the danger for a sufficient period of time to give him a reasonable opportunity to take measures to avoid the danger. The court stated:

"Wanton misconduct ... 'means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accomplished by a conscious indifference to the consequences ...'

"Other decisions of this court have recognized that *actual* prior knowledge of the injured person's peril need not be affirmatively established to constitute wanton misconduct. These cases, as well as the Restatement of Torts, clearly indicate that if the actor realizes *or* at least has knowledge of sufficient facts to cause a reasonable man to realize the existing peril for a sufficient period of time beforehand to give him a reasonable opportunity to take means to avoid the accident, then he is guilty of wanton misconduct if he recklessly disregards the

existing danger." 418 Pa. at 574, 212 A.2d 443-4. (emphasis in original)

Reckless disregard was defined by reference to Restatement of Torts §500 and comment(d) thereto.

This concept was followed in *Fugagli v. Camasi,* 426 Pa. 1, 229 A.2d 735 (1967). There the defendant drove an automobile around a curve while intoxicated at speeds approaching 90 miles per hour. Defendant's passenger was killed in a one-car accident. In holding that the jury could have found the existence of wanton misconduct, meaning that question should have been put to the jury, the court stated:

"It is not necessary for the tort-feasor to have actual knowledge of the other person's peril to constitute wanton misconduct. Such exists if he has knowledge of sufficient facts to cause a reasonable man to realize the existing danger for a sufficient period of time beforehand to give him a reasonable opportunity to take means to avoid the danger and, despite this knowledge, he recklessly ignores the other person's peril." 426 Pa. at 3, 229 A.2d at 736.

In *Focht v. Rabada,* 217 Pa. Super. 35, 268 A.2d 157 (1970), the Pennsylvania appellate courts for the first time addressed the issue whether punitive damages can be imposed on an intoxicated driver who injures another person. The court faced the question whether one who while driving under the influence of intoxicating liquor may, even without a bad motive, in certain circumstances, act with reckless indifference to the interests of others within the meaning of comment (b) of section 908, *supra.*

Comment (b) of section 908 referred to section 500 of the Restatement of Torts, Reckless Disregard of Safety. Comment (d) to section 500 states that:

"[I]f the conduct involves a high degree of chance that serious harm will result, that fact, that he knows or *has reason to know that others are within the range of its effect,* is conclusive of his recklessness." 217 Pa. Super. at 39, 268 A.2d at 159. (emphasis in original)

The court also referred to *Evans, supra* and *Fugagli, supra.*

The court concluded by stating that:

"Automobiles represent the most lethal and deadly weapons today entrusted to our citizenry. When automobiles are driven by intoxicated drivers, the possibility of death and serious injury increases substantially. Every licensed driver is aware that driving while under the influence of intoxicating liquor presents a significant and very real danger to others in the area. . . . In certain factual circumstances the risk to others by the drunken driver may be so obvious and the probability that harm will follow so great that outrageous misconduct may be established without reference to motive or intent." 217 Pa. Super. at 41, 268 A.2d at 161.

On the basis of these principles from *Evans, supra; Fugagli, supra; Focht, supra; Feld, supra;* and *Hughes, supra,* Mr. Justice McDermott and Mr. Justice Papadakos criticized the lead opinion in *Martin, supra,* for suggesting that wanton misconduct may not be sufficient for assessing punitive damages when that legal opinion said:

"Comment a to section 500 describes two distinct types of reckless conduct which represent very different mental states: (1) where the 'actor knows, or has reason to know ... of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk';

and (2) where the 'actor has such knowledge, or reason to know, of the fact, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so.' The first type of reckless conduct described in section 500 demonstrates a higher degree of culpability than the second on the continuum of mental states which range from specific intent or ordinary negligence. An 'indifference' to a known risk under section 500 is closer to an intentional act than the failure to appreciate the degree of risk from a known danger. This distinction is particularly important in determining what facts justify punitive damages in cases where, as here, liability is based on failure to warn against the risk of a disease with a long latency period arising out of exposure to a useful but unavoidably dangerous product.

"Under Pennsylvania law, only the first type of reckless conduct described in comment a to section 500, is sufficient to create a jury question on the issue of punitive damages." 508 Pa. at 171, 494 A.2d at 1097.

Recently, we had occasion to rule upon the right to claim punitive damages against an intoxicated driver in *Long v. Ohler*, 1 D.&C. 4th 402 (1988). There we observed that,

"In the intervening 17 years since *Focht*, thousands of Pennsylvania drivers, passengers and pedestrians have been killed or maimed by intoxicated drivers. Public awareness and educational campaigns have been aimed at informing drivers of the consequences of their actions when drinking alcoholic beverages. The Vehicle Code has been amended, mandatory imprisonment directed, and license suspensions increased in an attempt to curb this serious problem. Nevertheless, the dockets

continue to list a large number of persons appearing before our court each month charged with driving under the influence, 75 Pa.C.S. §3731." 1 D.&C. 4th at 405.

Because *Feld, supra; Evans, supra;* and *Focht, supra* have not been overruled and because *Martin, supra* does not present a definitive statement of the requisite mental state for the imposition of punitive damages, we feel compelled to follow the former cases and reject defendant's argument.

Defendants also argue that plaintiff's claim for punitive damages violated defendant's right to protection from excessive fines as provided in Amendment VIII of the U.S. Constitution and Article I, section 13 of the Pennsylvania Constitution as well as defendants' substantive due process rights. Defendants draw upon the concurring opinion of Justice O'Connor and Justice Scalia in *Bankers Life and Casualty Comp. v. Crenshaw,* 486 U.S. ____ , 108 S. Ct. 1645, 100 L.Ed. 2d 62 (1988) for this position. There Bankers Life appealed a jury award of $1.6 million in punitive damages on a $20,000 compensatory damages verdict. Although the Supreme Court declined to rule upon the constitutionality of excessive civil fines, the concurring opinion suggested that the court should carefully scrutinize procedures under which punitive damages are granted on the basis of standardless jury discretion, as was the situation under Mississippi law. Likewise, in Pennsylvania the "jury fixes the amount of such damages ... without yardstick, subject only to a reduction by the court if deemed excessive under the circumstances of the particular case." *DiSalle v. P.G. Publishing Co.,* 375 Pa. Super. 510, 544 A.2d 1345 (1988). However, it is clear that punitive damages must bear a reasonable relationship to

actual compensatory damages. *Kirkbride v. Lisbon Contractors Inc.,* 375 Pa. Super. 322, 516 A.2d 1 (1986).

On the sole basis of two concurring views in *Bankers Life,* (as attractive as that view may appear on the surface) we are not in a position to declare Pennsylvania's approach to the imposition of punitive damages unconstitutional without legislative or appellate court authority.

With that background we must now examine the record in a light most favorable to plaintiff, keeping in mind at all times that it is defendant's conduct which entitles one to punitive damages, not the result of his conduct. *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984).

On October 10, 1986, Naill was employed as a roofer for Smith at a job site in Hagerstown, Maryland. During his one-half hour lunch break at noon he consumed 62 ounces of beer and returned to work. At 3:00 p.m. Naill and two other employees left the job site in a nine-ton dump truck to return to Smith's office in Hanover, Pa. En route Naill and the others consumed from four to six 12-ounce beers each.

At a distance of three-tenths of a mile before the accident scene a warning was posted for reduced speed ahead and at two-tenths of a mile before the scene the speed limit was posted at 40 miles per hour. The area is a residential neighborhood. No adverse weather conditions existed at the time. Immediately before the accident Naill was traveling approximately 55 miles per hour, talking, and not paying close attention to the roadway. Upon looking ahead he saw a vehicle stopped in his lane to make a left-hand turn. Naill applied his brakes and skid-

ded 75 feet in his lane and another 48 and one-half feet in a curve pattern into decedent's lane of travel.

Immediately after the collision Naill, who was not injured, displayed bloodshot eyes, heavy eyelids, an odor of alcoholic beverage on his breath and was repetitive in his conversation. A blood specimen drawn from Naill at the Hanover General Hospital at 6:13 p.m. (nearly two hours after the accident) revealed a .0963 percent blood alcohol content.

It was admitted that Naill was acting within the scope of his employment at the time of the accident. Furthermore, there was some history of the drinking of alcoholic beverages by Smith employees after leaving a job site, including drinking in the employees' break room.

Although *Focht* did not suggest a blanket policy that every intoxicated driver involved in an accident is subject to punitive damages, we believe this case involves sufficient averments to deny the motion for summary judgment. Simply stated, Naill voluntarily consumed approximately 12 beers in the four hours preceding the accident, six of which were consumed between 3:00 and 4:30 p.m. He operated a nine-ton dump truck while intoxicated, at a velocity exceeding the legally posted speed limit in a residential area, without paying proper attention to the highway ahead as he approached an intersection. These facts, if established at trial, show a reckless indifference sufficient for imposition of punitive damages.

Plaintiff has not alleged that Smith was aware that Naill was drinking alcoholic beverages on the day in question but it is admitted that Naill was acting within the scope of his employment. Although admittedly a harsh rule, it nevertheless appears that in Pennsylvania a corporation is liable for punitive damages for acts of a servant, acting

within the scope of his employment if plaintiff had such right against the servant. *Lake Shore & Michigan So. Ry. v. Rosenzweig,* 113 Pa. 519, 544, 6 Atl. 545, 553 (1886). See *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (1979); *Skeels v. Universal C.I.T. Credit Corp.,* 335 F.2d 846 (1964). However, this rule must be applied with great caution where the employee's act is not authorized or approved by his principal. *Funk v. Kerbaugh,* 222 Pa. 18, 19, 70 Atl. 953, 954 (1908).

On the surface, the cautionary language in *Funk v. Kerbaugh, supra,* would suggest the adoption of the view expressed in Restatement (Second) of Torts §909, Punitive Damages Against a Principal,[2] and set forth in Pa. S.S.C.J.I. §14.01, which limits an employer's liability for punitive damages imposed for the conduct of its employee. However, Pennsylvania courts have refused to adopt the standard in section 909. *Dean Witter Reynolds Inc. v. Genteel,* 346 Pa. Super. 336, 499 A.2d 637 (1985); *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa. Super. 90, 464 A.2d 1243 (1983). Although *Funk, supra,* allowed recovery under the theory of vicarious liability the court noted that the principal had actual knowledge of its employee's actions. The same could be said for the award of punitive damages in *Dean Witter, supra.* In *Delahanty, supra,* vicarious liability was imposed because the employ-

---

2. "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

"(a) the principal or managerial agent authorized the doing and the manner of the act, or

"(b) the agent was unfit and the principal or managerial agent was reckless in employing or retaining him, or

"(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

"(d) the principal or managerial agent of the principal ratified or approved the act."

ees' acts were done within the scope of their employment and with intent to further the employer's interest.

Based upon the current state of Pennsylvania law on vicarious liability for punitive damages, we must deny the motion as to Smith. Accordingly, we enter the attached

## ORDER OF COURT

And now, January 18, 1989, defendants' motion for summary judgment is denied.