J-A13037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MONET HARBISON AND DANIEL HARBISON | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| MARK DEMCHICK, CONIAH, LLC., VECTOR V. COLE, COLE'S REAL ESTATE, INC., LIRON KAHN GROSSMAN, GROSSMAN GROUP, LLC., AND VICTORY REAL ESTATE, LLC | : : : : : : : : : | No. 1719 EDA 2020 |
| APPEAL OF: MARK DEMCHICK | : | |

Appeal from the Judgment Entered October 15, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180501828

BEFORE:   BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                   **FILED JULY 16, 2021**

Appellant Mark Demchick appeals the judgment entered by the Court of Common Pleas of Philadelphia County in favor of Monet Harbison and Daniel Harbison.  Demchick claims the trial court abused its discretion in finding the jury's verdict was not against the weight of the evidence, refusing to preclude a certain witness from testifying, and allowing the jury to award punitive damages.  After careful review, we affirm.

In May 2018, the Harbisons filed this action after purchasing the residential property located at 4229 Filbert Street, Philadelphia from Demchick

_____

* Former Justice specially assigned to the Superior Court.

and Coniah, LLC, of which Demchick is the sole proprietor. The Harbisons alleged that when they moved into the home, they discovered "a cavalcade of major, material defects, structural changes and repairs at the property" that had not been disclosed. Compl., 5/18/18, at 1.

The Harbisons claimed Demchick and Coniah, LLC violated the Real Estate Seller Disclosure Law and the Unfair Trade Practices and Consumer Protection Law and were liable for fraudulent misrepresentation/concealment, negligent misrepresentation/concealment, and breach of contract.[1] The trial court summarized the factual background as follows:

> On December 7, 2017, the Coniah Defendants entered into an agreement to sell a property at 4229 Filbert Street, Philadelphia, PA 19104 ("the Property") to plaintiffs Monet Harbison and Daniel Harbison ("the Harbisons"). (Sale Agreement ("Agreement"), at Tr.Ct. Dkt 2/4/20 (Trial Exhibits"), P-1). In connection with the proposed sale, the Coniah Defendants made disclosures related to the plumbing and electrical systems of the Property:
>
> > 11. PLUMBING SYSTEM
> > Are you aware of any problems with your plumbing fixtures (e.g. including but not limited to kitchen, laundry, or bathroom fixtures, wet bars, exterior faucets, etc.)?
> > **Answer: No.**
> >
> > 15. ELECTRICAL SYSTEM
> > Are you aware of any problems or repairs needed in the electrical system? If yes, explain.
> > **Answer: Yes. Might need work done on it.**

---

[1] The Harbisons also named as defendants Vector V. Cole of Cole's Real Estate (Demchick's real estate broker) and Liron Kahn Grossman of Grossman Group, LLC and Victory Real Estate LLC (the Harbisons' broker). However, the parties subsequently stipulated to the dismissal with prejudice of the Harbisons' claims against the brokers. *See* Stipulation, 8/15/19; Stipulation, 1/22/20.

(Sale Disclosure Form, Trial Exhibits, P-2). After the Property inspection, on February 9, 2018, Mr. Demchick and the Harbisons executed an addendum to the Agreement entitled "Addendum for Repairs." (Addendum for Repairs ("Addendum"), Trial Exhibits, P-11). The Addendum stated that $5,000 would be kept in escrow until Mr. Demchick made certain repairs. (*Id*.) It further states:

> if the repairs above won't be completed by 2/16/18 to the inspector's satisfaction and/or if the buyers won't get the letters from the plumber and electrician by that date – the parties agree that the escrow money will go to the buyers.

(*Id*.) In accordance with the addendum, the Harbisons received the $5,000 from escrow after Mr. Demchick failed to make the required repairs. (N.T. 1/28/20 at 61: 6-10).

Shortly after moving into the Property, the Harbisons noticed water seeping into the basement and that electric appliances were, as plaintiff Daniel Harbison testified, "short circuiting and being overloaded." (N.T. 1/28/20, at 63:18—64:16).

Liam McGarrigle, owner of RCD Contractors, LLC, which performed repairs at the Property, testified on the Harbisons' behalf. He testified that he has an OSHA-30 certification and a Pennsylvania home improvement contractor's license. (*Id*. at 171:1-10). Mr. McGarrigle performed repairs at the Property during the summer of 2019. (*Id*. at 170:7-12, 172:1-9). While working at the Property, Mr. McGarrigle identified safety issues with the Property's electrical and plumbing systems. (*Id*. at 175:12-15). Most importantly, Mr. McGarrigle observed multiple junction boxes with live electric wires that were not "capped off" and were hidden behind drywall. (*Id*. at 178:14-180:12; Photographs, Trial Exhibits at P-40). Mr. McGarrigle further explained that the live electric wires covered behind drywall created an electrical fire hazard. (*Id*. at 202:2-203:1).

Kain Warner, owner of All the Colors Contracting, also testified that he performed repairs at the Property in March 2019. (*Id*. at 156:20-25). Mr. Warner has an OSHA-15 certification and a Pennsylvania home improvement contractor's license. (*Id*. at 156:1-6). The Harbisons retained Mr. Warner to address plumbing and electrical issues with the Property. (*Id*. at 157:8). Mr. Warner testified that, while making repairs, he discovered that the Property's sump pump was defective. (*Id*. at 157:11-25). According to Mr. Warner, the sump pump did not comply with the

National Plumber's Code. (*Id*. at 161:14-162:10). Specifically, the laundry drain system, the bathroom drains, and the bathroom sink drain were all tied to the same defective sump pump, causing it to overflow and for water to seep into the basement. (*Id*. at 158:20-159:2). Mr. Warner testified that the defective sump pump was a safety hazard because "not using the correct pump to get rid of the waste" was a "biohazard." (*Id*. at 164:18-21). Mr. Warner also corroborated Mr. McGarrigle's testimony regarding the electrical system, and testified that it violated the National Electrician's Code. (*Id*. at 162:12-17).

Mr. Demchick testified that, before the sale of the Property, he was aware the electrical system needed to be upgraded and did not comply with the relevant codes:

> **Q**. So you're saying that you knew that the electrical system of the property was overloaded and you knew there were code issues at the property?
> **A**. I put that on there [referencing the disclosure form].
>
> ***
>
> **Q**. Did you know that the electrical system needed to be upgraded?
> **A**. I'm not an electrician, that's why I put it might need work […]
> **Q**. Did you know that the electrical system of the property did not comply with electrical code?
> **A**. That's why I put that it might need work.

(N.T. 1/29/2020, 97:1-5, 98: 4-17). Nevertheless, Mr. Demchick provided letters [to the Harbisons] from an electrician and a plumber, both dated February 2018, stating that the electrical and plumbing systems were functioning properly and compliant with the relevant codes. (*See* N.T. 1/28/2020 at 57:16-60:12; Electrician's Letter, Exhibit P-16; Plumber's Letter, Exhibit P-17). Daniel Harbison testified that the letters from the electrician and plumber made the Harbisons think that the house was "ready for [them] to move in." N.T. 1/28/20, at 59:2-60:9.

Mr. Demchick also testified that he performed electrical and plumbing repairs at the Property on behalf of Coniah, LLC, sometimes with the assistance of two workmen he hired. (N.T. 1/29/20, at 86:5-11; 90:14-22; 91:2-14; 93:15-94:1; Demchick Response to Interrogatories, P-28, ¶¶ 22-23). Mr. Demchick testified that before the sale of the Property, "I put a junction box in, I capped the wires, put in a junction box, and put a cover on

the junction box." (*Id*. at 25:1-11). Mr. Demchick performed this work after the execution of the February 9, 2018 Addendum, but before Mr. McGarrigle discovered live wires behind drywall in the Property in the summer of 2019. (*See* N.T. 1/28/20, 62:12-24; 170:7-12, 172:1-9). Mr. Demchick also testified that, while he owned the Property, he replaced leaky pipes, "installed [a] hookup for [the] washer and dryer," and replaced the Property's "bathroom fixtures." (N.T. 1/29/20 at 83:4-84:5; Demchick Response to Interrogatory, Trial Exhibits, P-28, ¶ 16). Mr. Demchick admitted that he is not a licensed electrician or plumber (*Id*. at 6:13-18). Mr. Demchick also admitted that he did not obtain permits to perform work at the Property. (N.T. 1/29/2020 at 24:19-21; 95:8-10).

Trial Court Opinion ("T.C.O."), 8/26/20, at 1-5.

At the conclusion of trial, on January 31, 2020, the jury found in favor of the Harbisons and against Demchick and Coniah, LLC on all counts except for breach of contract. In addition, the jury made specific findings that (1) Demchick and Coniah, LLC had not established a defense for accord and satisfaction[2] and (2) punitive damages were warranted for Demchick and Coniah, LLC's outrageous conduct that "maliciously, wantonly, willfully, oppressively, or showed reckless indifference" to the Harbisons' interests. Verdict sheet, 1/23/20, at 5-6. As a result, the jury awarded the Harbisons $45,928.20 in compensatory damages and $66,700.00 in punitive damages. Accordingly, the jury's verdict totaled $112,628.20.

On February 10, 2020, Demchick and Coniah, LLC filed a motion for post-trial relief. The parties submitted briefs and oral argument was

---

[2] The jury made a specific finding that Demchick and Coniah, LLC had not "made a clear and unequivocal offer of payment in full satisfaction of any disputes between the parties and that the plaintiffs Monet and Daniel Harbison accepted that offer and payment." Verdict sheet, at 5.

scheduled. However, in light of the judicial emergency caused by the COVID-19 pandemic, the trial court was unable to hold oral argument until August 24, 2020, once argument sessions were permitted using Zoom technology. On August 26, 2020, the trial court denied the post-trial motion.

On August 26, 2020, Demchick filed a notice of appeal purporting to appeal from the trial court's order denying his post-trial motion. However, "an appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions." *Young v. Lippl*, ___A.3d___, 2021 PA Super 56 (Pa.Super. Mar. 31, 2021) (citing *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 514 (Pa.Super. 1995) (citation omitted)).

As no judgment had been entered on the trial court docket when Demchick filed his notice of appeal, this Court issued an order on October 15, 2020, directing Demchick to praecipe the trial court prothonotary to enter judgment on the decision of the trial court as required by Pa.R.A.P. 301. As Demchick complied with this order, Demchick's notice of appeal previously filed in this case will be treated as filed after the entry of judgment. *See* Pa.R.A.P. 905(a). We have amended the caption accordingly.

Demchick raises the following issues for our review on appeal:

1. Whether the Court abused its discretion in denying [Demchick's] post-trial motion that the Jury Verdict was against the weight of the evidence or in the alternative, refusing to modify the verdict or allow remittitur of damages awarded?

2. Whether the Court abused its discretion in denying [Demchick's] Motion to preclude the trial testimony of Liam McGarrigle?

3. Whether the Court abused its discretion in allowing a Jury charge for punitive damages and denying [Demchick's] post-trial motion to vacate the award of said damages?

Demchick's Brief, at 3 (reordered for review).

Demchick first contends that the trial court abused its discretion in finding that the jury's verdict was not against the weight of the evidence. Our review is guided by the following principles:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

> However, [i]f there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not

> entitled to a new trial where the evidence presented was conflicting and the fact-finder could have decided in favor of either party.

*Spencer v. Johnson*, 249 A.3d 529, 566 (Pa.Super. 2021) (quoting *McFeeley v. Shah*, 226 A.3d 582, 594 (Pa. Super. 2020) (citations and quotation marks omitted)).

Demchick's challenge to the weight of the evidence is multifaceted and includes several subclaims. Demchick argues that the jury's verdict was against the weight of the evidence as he presented letters from a plumber and electrician which stated that the plumbing and electrical systems on the Property were in working order. This particular argument centers on Demchick's assertion that the weight of the evidence did not support the finding that the Property contained a material defect that would entitle the Harbisons to damages.

As noted above, the jury found against Demchick on claims for violation of the Pennsylvania Real Estate Seller Disclosure Law (RESDL), violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), fraudulent misrepresentation/concealment, and negligent misrepresentation/concealment.

The RESDL, which became effective on December 20, 2001, applies "to all residential real estate transfers" except for certain types of transfers, none of which is applicable here. *See* 68 Pa.C.S.A. § 7302. Section 7303 of the RESDL provides that:

> Any seller who intends to transfer any interest in real property **shall disclose to the buyer any material defects** with the

property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form). A signed and dated copy of the property disclosure statement shall be delivered to the buyer in accordance with section 7305 (relating to delivery of disclosure form) prior to the signing of an agreement of transfer by the seller and buyer with respect to the property.

68 Pa.C.S.A. § 7303 (emphasis added). Section 7308 of RESDL imposes an affirmative duty on the seller, providing that, [i]n completing the property disclosure statement, the seller shall not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect." 68 Pa.C.S.A. § 7308.

For the purposes of the RESDL, a "material defect" is defined as:

[a] problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

68 Pa.C.S.A. § 7102. Section 7304 specifically provides that the property disclosure statement must call for disclosures with respect to a multitude of subjects, including, but not limited to the property's "water and sewage systems or service," "plumbing system," and "electrical system." 68 Pa.C.S.A. § 7304(b)(8), (9), (11).

As noted above, Demchick specifically contends that it was unreasonable for the jury to find there was a biohazard or material defect in

either system as he presented letters from a plumber and electrician stating that these systems were in working order.

Our review of the record shows that there is ample evidence to support the jury's specific factual finding that Demchick failed to disclose material defects in the Property before the parties entered an agreement to transfer the Property. The Harbisons presented the testimony of two contractors, McGarrigle and Warner, who consistently testified that there were defects in the Property's electrical and plumbing systems, such that both systems violated relevant code.

McGarrigle testified that he discovered the Property had ten junction boxes with live wires that had been concealed under drywall. McGarrigle found this discovery to be "scary" as the hidden junction boxes, which were previously unknown and could not be accessed, constituted a clear fire hazard. Warner testified that the Property's defective sump pump, which was tied to the drain systems, constituted a "biohazard." Both McGarrigle and Warner testified that these defects were material and would not be readily observable through a visual inspection of the property.

As a result, Demchick has not shown he is entitled to a new trial simply by presenting letters from a plumber and electrician that may conflict with the evidence presented by the Harbisons. Neither of these individuals testified on Demchick's behalf at trial. As the jury, as factfinder, was free to believe all, part, or none of the evidence the parties presented, we decline to disturb the jury's credibility determinations. *Spencer*, *supra*.

- 10 -

Demchick also claims the verdict is against the weight of the evidence based on his allegation that the Harbisons failed to substantiate the jury's award of compensatory damages.

As a general rule, Pennsylvania courts have held that damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences." *Bailets v. Pennsylvania Tpk. Comm'n*, 645 Pa. 520, 540, 181 A.3d 324, 336 (2018). This Court has consistently held that:

> The determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses. Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

*Discover Bank v. Booker*, ___A.3d.___, 2021 PA Super 139 (Pa.Super. July 7, 2021) (quoting *Judge Tech. Servs., Inc. v. Clancy*, 813 A.2d 879, 885 (Pa. Super. 2002) (citation omitted)).

In this case, the Harbisons submitted documentary proof of damages through invoices and receipts totaling $52,495.20. Included within that total was the Harbisons' contract with RCD Contractors to perform repairs on the electrical and plumbing systems and an invoice for the repairs for $21,979.50. Demchick did not object to the Harbisons' documentary proof of damages.

- 11 -

Therefore, based on this data, it was reasonable for the jury to award the Harbisons $45,928.20 in compensatory damages.

In addition, Demchick claims that while the jury awarded the Harbisons $52,495.00 in compensatory damages, Demchick asserts that the Harbisons had already received $22,800.00. However, other than this single bald assertion, Demchick fails to develop this argument with any further explanation of the applicable facts, relevant authority or pertinent legal analysis.

Our courts have consistently held that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *In re Major*, ___Pa.___, 248 A.3d 445, 454 (2021) (quoting *Commonwealth v. Johnson*, 604 Pa. 176, 985 A.2d 915, 924 (2009)). As a result, we find this issue to be waived.

Demchick also alleges that there was no legal basis for the jury to find that the Property had material defects as the jury made a specific finding that he was not liable for breach of contract. To the extent that this argument can even be construed as a challenge to the weight of the evidence, Demchick fails to acknowledge that the jury found him liable for the torts of fraudulent and negligent representation/concealment and also for violating the RESPL and the UTPCPL. *See Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 322 (Pa.Super. 2015) (noting that the RESPL and UTPCPL are laws protecting consumers which permit private actions).

- 12 -

Moreover, Demchick does not develop any argument as to why the jury's finding that he was not liable for breach of contract necessarily precludes the entry of judgment on any of the other counts. We decline to review this claim further. ***See Major***, ***supra***.

Given that we have found no merit to any of the foregoing claims, we conclude that the trial court properly exercised its discretion in finding that the jury's verdict was not against the weight of the evidence.

In his second claim, Demchick asserts that the trial court abused its discretion in denying his motion to preclude the trial testimony of Liam McGarrigle on the basis that his name was not properly included in a pre-trial statement that identified potential witnesses.

Our rules of civil procedure provide that the parties must provide a pre-trial statement which includes, *inter alia*, "a list of the names of all addresses of all persons who may be called as witnesses by the party filing the statement." Pa.R.C.P. 212.2(a)(3). This rule states that "a reference which does not state the name of the witness shall be permitted when the witness is described by title or capacity." Pa.R.C.P. 212.2(a)(3). Further, Rule 212.2(c) provides "[w]here the trial judge determines that unfair prejudice shall occur as a result of the non-compliance with subdivision[] (a) …, the trial court shall grant appropriate relief which may include … preclusion or limitation of the testimony of any witness whose identity is not disclosed in the pre-trial statement." Pa.R.C.P. 212.2(c).

In determining whether to preclude the testimony of a witness who has not been identified in a pre-trial statement, our courts have considered:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith [or] willfulness in failing to comply with the court's order.

*Feingold v. S.E. Pennsylvania Transp. Auth.*, 512 Pa. 567, 574, 517 A.2d 1270, 1273 (1986).

The trial court found that the Harbisons gave ample notice that a representative of RCD Contractors, LLC would testify at the parties' trial. As noted above, the Harbisons filed a pre-trial memorandum on October 24, 2020 identifying "RCD Contractors, LLC" as a potential witness. The trial court pointed out that the Harbisons had previously, in support of their claim of damages, produced to Demchick's counsel on September 9, 2019, a contract between Harbisons and RCD Contractors signed by McGarrigle and an invoice in the amount of $21,979.50. McGarrigle testified that he is the owner of RCD Contractors. Notes of Testimony (N.T.), 1/28/20, at 170.[3]

_____

[3] Demchick put great emphasis on the fact that the parties disagreed on whether the Harbisons' counsel had produced documents identifying RCD Contractors to defense counsel in a CD-ROM in March 2019. However, we find this argument to be irrelevant as the Court concluded that it did not consider this evidence in dismissing this claim as it found that the Harbisons had failed to meet their burden to show that the CD-ROM had been produced before the close of discovery. *See* T.C.O. at 5, n. 3.

Regardless of whether the Harbisons' identification of RCD Contractors, LLC in its pretrial statement was sufficient to satisfy Rule 212.2, we agree that Demchick was not unfairly prejudiced. As noted above, Demchick was not unfairly surprised by the Harbisons' decision to call McGarrigle as a witness as the Harbisons had notified Demchick of RCD Contractors' involvement in this matter five months before trial.

Demchick did not seek to reopen discovery to take McGarrigle's deposition. Moreover, Demchick has not alleged that allowing McGarrigle to testify disrupted the orderly or efficient trial of this case and there is no evidence to show the Harbisons acted in bad faith in not specifically naming McGarrigle as the owner of RCD Contractors in their pretrial statement.

Given these facts, we conclude that the trial court did not err in denying Demchick's motion to preclude McGarrigle from testifying based on the Harbisons' failure to specifically name him as the owner of RCD Contractors in its pretrial statement.

Lastly, Demchick claims the trial court abused its discretion in allowing a jury charge for punitive damages and denying his post-trial motion to vacate the punitive damage award.

> The standard governing the award of punitive damages in Pennsylvania is settled. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984) (*quoting* Restatement (Second) of Torts § 908(2) (1979)); *see also Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355, 358 (1963). As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions

are so outrageous as to demonstrate willful, wanton or reckless conduct. *See SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702, 704 (1991); *Feld,* 485 A.2d at 747–48; *Chambers,* 192 A.2d at 358. *See also* Restatement (Second) of Torts § 908, comment b. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 803 (1989); Restatement (Second) of Torts § 908 (1) ("Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."). Additionally, this Court has stressed that, when assessing the propriety of the imposition of punitive damages, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *See Feld,* 485 A.2d at 748; *see also Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088, 1097 n. 12 (1985) (plurality opinion).

\*\*\*

Thus, in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Id.* at 1097–98.

*Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 121–24, 870 A.2d 766, 770–72 (2005).

We agree with the trial court's assessment that Demchick had a subjective appreciation of exposing the Harbisons to a risk of harm and acted in conscious disregard of that risk. Demchick acknowledged that the Property's electrical system "needed work" and admitted that he attempted to perform the repairs himself although he was not a licensed electrician. As noted above, Demchick expressly conceded that he knew the Property's electrical system did not comply with the relevant electrical code, but nevertheless, supplied the Harbisons a letter from an electrician stating that

the electrical system was up to code. After the Harbisons moved in and hired contractors to assess the electrical system, the Harbisons discovered ten junction boxes with exposed live wires that were concealed under drywall, which created a clear fire hazard.

In light of these facts, it is reasonable to infer that Demchick knew that the Harbisons would be exposed to a risk of harm by the safety hazards created by the electrical system, disregarded this risk, and actively concealed the hazards from the Harbisons. As such, we reject Demchick's claim that punitive damages were unwarranted.

Moreover, we find the trial court properly refused to reduce the punitive damage award. We are mindful that "[j]udicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The refusal of a remittitur is peculiarly within the discretion of the trial court and will not be reversed absent an abuse of discretion or error of law." *Bailets*, 645 Pa. at 540, 181 A.3d at 336.

As noted above, Demchick was found liable for fraudulently misrepresenting the current state of the Property in assuring the Harbisons that the electrical and plumbing systems were in working order when the Property contained numerous concealed junction boxes that posed a fire hazard and a defective sump pump which was a potential biohazard. As a result, the trial court properly exercised its discretion in finding that the punitive damage award was not excessive and in denying Demchick's request for remittitur.

For the foregoing reasons, we affirm the judgment in favor of the Harbisons.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/2021